## STATE vs. ISAAC J. SHORT.

1. HOMICIDE—EVIDENCE—REPUTATION OF DECEASED.

In a prosecution for homicide, where accused had testified that the kill-ing was done in self-defense, evidence of the deceased's reputation for quarrel-someness and violence was material.

2. HOMICIDE—EVIDENCE—SELF-DEFENSE—DECLARATIONS BY DECEASED.

In a prosecution for homicide, where self-defense was relied on, the accused could not testify as to communications whereby the deceased told him of the trouble he had had with others.

3. HOMICIDE—MURDER—ESSENTIALS—"MALICE".

"Malice," which is a condition of the mind, and is not restricted to spite or malevolence toward a particular person, but includes general malignity and reckless disregard of human life, is an essential to the crime of murder.

4. HOMICIDE—PRESUMPTIONS—BURDEN OF PROOF—MALICE.

Whenever a homicide is deliberately committed, the law presumes malice, and the accused has the burden of rebutting that presumption.

5. HOMICIDE—EVIDENCE—PRESUMPTIONS.

The legal presumption of malice which arises from proof of a homicide is not malice aforethought, but is only implied malice, and so only murder in the second degree can be presumed.

6. HOMICIDE—MURDER—"MURDER IN THE FIRST DEGREE"—ESSENTIALS —"EXPRESS MALICE AFORETHOUGHT".

"Murder in the first degree" is committed where the killing was done with "express malice aforethought," which exists when one person kills another with a sedate, deliberate mind and formed design.

7. HOMICIDE—EVIDENCE—PRESUMPTIONS.

Proof of a killing with a deadly weapon raises a presumption of malice aforethought.

8. HOMICIDE—MURDER IN THE FIRST DEGREE—INTENTION.

Where accused deliberately intended to kill deceased, he is guilty of mur-der in the first degree, though the length of time of the intention was ever so short.

9. HOMICIDE—MURDER—"MURDER IN THE SECOND DEGREE."

Where one person unlawfully kills another with implied malice, the crime is "murder in the second degree."

10. HOMICIDE—"MANSLAUGHTER".

Where one person unlawfully kills another without malice, the crime is "manslaughter".

11. HOMICIDE—BURDEN OF PROOF—SELF-DEFENSE.

An accused has the burden of proving self-defense.

12. ASSAULT AND BATTERY—JUSTIFICATION.

No looks, gestures, or words, however insulting or offensive, can justify an assault.

13. HOMICIDE—DEFENSES—SELF-DEFENSE.

In repelling an assault, no more force than is necessary may be used, and

one assaulted cannot take the life of his assailant, where by retreat he may escape death or great bodily harm.

14.   HOMICIDE—DEFENSES—SELF-DEFENSE.

One threatened with an assault need not wait until struck, but may protect himself by striking the first blow and repelling the attempted injury.

15.   HOMICIDE—DEFENSES—SELF-DEFENSE.

One using greater force than is necessary to repel an assault is guilty of an offense.

16.   HOMICIDE—SELF-DEFENSE.

One assaulted upon a sudden affray, and believing himself to be in imminent danger of being killed or receiving great bodily harm, may, to avoid such injuries, use a deadly weapon in his defense.

17.   HOMICIDE—SELF-DEFENSE—DANGEROUS REPUTATION OF DECEASED.

In a prosecution for homicide, where it was shown that accused knew deceased's reputation for quarrelsomeness and violence, evidence of deceased's reputation should be considered in determining whether accused's promptness in killing deceased was justified.

18.   HOMICIDE—SELF-DEFENSE—REASONABLE FEAR.

In determining what constitutes reasonable fear, the conduct of the deceased before the killing, the violence of his assault, the character of the weapon he employed, and his superior advantage of size and of strength, as well as the accused's knowledge of his reputation for quarrelsomeness and violence, should be considered.

19.   CRIMINAL LAW—CONFLICTING EVIDENCE.

Where the testimony as to the guilt or innocence is conflicting, it should be reconciled by the jury, if possible, and, if not, the jury may reject that which they deem unworthy of credit, having regard to the intelligence of the witnesses, their opportunity to know, and their bias or interest.

20.   CRIMINAL LAW—QUESTIONS FOR JURY—GOOD CHARACTER OF ACCUSED.

The good character of an accused person should be weighed by the jury with the rest of the evidence.

21.   CRIMINAL LAW—PRESUMPTION OF INNOCENCE.

One accused is presumed to be innocent until his guilt is established beyond a reasonable doubt.

22.   CRIMINAL LAW—EVIDENCE—REASONABLE DOUBT.

Proof of accused's guilt beyond a reasonable doubt does not require absolute certainty of proof, but such proof as would satisfy a fair and unprejudiced mind.

*(October 10, 1911.)*

PENNEWILL, C. J., and CONRAD and RICE, J. J., sitting.

*Frank M. Jones*, Deputy Attorney General, for the state.

*Robert C. White* and *Daniel J. Layton, Jr.*, for the prisoner.

At a Court of Oyer and Terminer, in and for Sussex County, beginning October ninth, 1911, the prisoner, a colored man, was placed upon trial upon the charge of murder of the first degree.

At the trial the state produced evidence to the following effect:

That on the sixteenth of July, 1911, at Lewes, the prisoner shot and wounded one Charles L. Wilson, who as a result of said wound died within two days. That early in the afternoon of the sixteenth of July, the prisoner and the man Wilson had some words over the prisoner's housekeeper or wife, near the place where the shooting occurred; that immediately afterwards Short, who was moving backward towards his home followed by Wilson, went into his house and got his revolver and came out and shot at Wilson twice, the first shot not taking effect but the second taking effect in the upper part of the abdomen.. That Wilson then drew back a few paces, removed his shirt and exposed the place where he was shot and went on a few feet further and fell near a house and was taken from there to his own house near by, a physician being summoned and after receiving such medical attendance as the physician could render, he died from the effects of the wounds thus received on the early morning of July eighteenth, 1911. The defense was self-defense; the contention of the prisoner being that at the time he shot Wilson the latter was pursuing him and attempting to attack him with a razor; that he had been pursued by Wilson in a threatening and quarrelsome manner during the most of the afternoon and was unable to get away from him.

The prisoner was asked by his counsel the following questions:

Q.   Did you know his (the deceased's) reputation in the community for quarrelsomeness and violence?

(Objected ·to by the state as immaterial. Counsel for the prisoner cited in support of the question, *State v. Uzzo.*, 6 *Penn.* 212. The objection was overruled.)

A.   Yes, sir.

Q.   What was it?

A.   It was bad.

Q.   Had Wilson (the deceased) ever told you about any trouble he had had with a man in Denton, Maryland, where he had formerly lived, and if so, what was it?

A.   Yes, sir; he told me he cut a man up there in his home in Denton, Maryland.

(Objected to by the State as immaterial.   Mr. Layton for the prisoner cited in support of the testimony, *State v. Wiggins*, 7 *Penn.* 127, 76 *Atl*, 632; *Wharton on Homicide*, *Sec.* 272, (3 *Ed.*); *State v. Burton*, 66 *Pac.* 633, 54 *N. W.* 648).

Pennewill, C. J.:—We think the court in other cases, for instance, *State v. Wiggins*, *supra*, and *State v. Lee*, 1 *Boyce* 18, 74 *Atl.* 4, have gone far  in admitting testimony respecting threats, and the deceased's reputation for violence and quarrelsomeness. And while it  may be  difficult  to distinguish this question, in principle, from one involving a threat, yet we think its admission would open the door wider than it  has ever  been in any previous case in this state.

The effect of the admission of such testimony would be to permit the defendant in every homicide case to prove communications made by the deceased to the prisoner, and of course it would be impossible for the state  to disprove them.   We think the court has gone quite as far as it should along this line, and our feeling is that the rule should not be further extended.  .

We sustain the objection.

The prisoner was then asked to step aside and one B. was called as a witness and testified, without objection, as follows:

"I know Isaac J. Short and I knew Charles Wilson in his lifetime.   I told Isaac J. Short that I had known Charles Wilson for seven or eight years and that he was a bad man;  that I knew what he did in Denton, that he was in a shooting scrap there and cut a man, beat his wife up and was sent up for two years for that."

*Short*, the  prisoner, was then recalled and on motion of the state the previous testimony of the prisoner as to what Wilson had told him was ordered stricken out.   The prisoner then testified without objection, as follows:

"I know Mr. Bartlett who  just testified. He told me that Wilson was a dangerous man;  that he cut a man up down in Denton and beat his wife and was serving time for it."

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—Isaac J. Short, the prisoner at the bar, is charged in this indictment with the murder of Charles L. Wilson, in the Town of Lewes, in this county, on the eighteenth day of July, of the present year.

The prisoner does not deny that he shot and killed the deceased at the place and time alleged, but claims that he did the killing in the necessary and lawful defense of his life, or to escape great bodily harm, from an imminent assault upon him by the deceased with a razor.

Inasmuch as the prisoner is charged with murder of the first degree, it is necessary for the court to define and explain to you as clearly as we can, the two degrees of murder as well as manslaughter.

[3, 4] But we will say, first, that malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or of the second degree. Malice is a condition of the mind or heart, and as here used the term is not restricted to spite or malevolence toward the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief. Whenever the fatal act is done deliberately, or without adequate cause, the law presumes that it was done with malice, and the burden is on the prisoner to show from the evidence, or by inference from the circumstances of the case, that the act was not done with malice.

[5] Malice is implied by law from every unlawful and cruel act committed by one person against another, for the law considers that he who does an unlawful and cruel act voluntarily, does it maliciously. When the killing is shown to have been done with a deadly weapon, that is, with a weapon likely to produce death, it is presumed to have been done maliciously.

Where the homicide is proved the law presumes that it was committed with malice, but it goes no further than to imply malice, and therefore the legal presumption goes no further in such case than that it was murder of the second degree.

[6] Murder of the first degree is where the killing was done

with express malice aforethought.   Express malice aforethought exists when one person kills another with a sedate, deliberate mind and formed design, which formed design or purpose may be shown from the circumstances attending the act, such as the deliberate selection and use of a deadly weapon, knowing it to be such, stealthily lying in wait, preconcerted plans, or the previous procurement or preparation of instruments, contrivances or other means for slaying the victim.

[7, 8]   When the killing by a deadly weapon is admitted or proved, malice aforethought is presumed, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused, as the natural and probable consequences of the act are presumed by the law to have been intended by the person in using a deadly weapon.   If the jury are satisfied from the evidence that the prisoner, when he killed the deceased, deliberately intended so to do, the length of time that said intention existed is immaterial, and the killing under such circumstances would be murder unless it was committed in lawful self-defense.

[9]   Murder of the second degree is where the killing was done with implied malice; that is, when the malice was not express, as in murder of the first degree, but is an inference, or conclusion of law, from the facts proved.   It is where there is no deliberate mind and formed design to take life, but where the killing, nevertheless, was done without justification or excuse, and without provocation, or without sufficient provocation to reduce the offense to manslaughter.   For example, where the killing was done without design and premeditation, but under the influence of a wicked and depraved heart, or with a cruel and reckless disregard of human life, the law implies malice and makes the offense murder of the second degree.

[10]   Manslaughter is where one person unlawfully kills another without malice.   For example, it is committed when one in a sudden quarrel, in the heat of blood or in a transport of passion, without malice, inflicts a mortal wound, without time for reflection or for the passions to cool.   In order to reduce the offense to manslaughter the provocation must be very great; so great as to produce such a transport of passion as to render the

person, for the time being, deaf to the voice of reason.  While murder proceeds from a wicked and depraved heart, and is characterized by malice, manslaughter results not from malice but from unpremeditated and unreflecting passion.

We have been asked to charge you in respect to the law of self-defense, and we will do so in conformity with what we believe to be the meaning and intent of the decisions of the court upon that principle of the law.

[11]  The burden of establishing self-defense to the satisfaction of the jury rests upon the accused.

[12, 13]  No looks or gestures, however insulting, no words however opprobrious or offensive, can amount to a provocation sufficient to excuse or justify an assault.  And in repelling or resisting an assault no more force may be used than is necessary for the purpose; and, if the person assailed use in his defense greater force than is necessary for that purpose, he becomes the aggressor.  If the deceased first attacked the prisoner, even though the attack was of such a character as to create in the mind of the prisoner a reasonable belief that he was in danger of death or great bodily harm, it was his duty to retreat, if he could safely do so, or to use such other reasonable means as were within his power to avoid killing his assailant.  No one may take the life of another, even in the exercise of the right of self-defense, unless there is no other available means of escape from death or great bodily harm. If the jury are satisfied from the evidence that the deceased first attacked the prisoner, and that from the character of such attack the prisoner had reasonable cause to believe, and did believe, that he was in imminent danger of death or great bodily harm, and that he had no other reasonable means of avoiding or preventing death or great bodily harm, then the killing of the deceased was a justifiable act of self-defense, and the prisoner should be acquitted of any crime.

[14, 15]  The law accords to every one the right to protect his person from assault and injury by opposing force to force, and he is not obliged to wait until he is struck by an impending blow. If a weapon be raised in order to shoot or strike, or the danger of other personal violence be imminent, the party in such imminent

danger may protect himself by striking the first blow, for the purpose of repelling and preventing the attempted injury.   But the opposing force or measure of defense must not be unreasonably disproportionate to the requirements of the occasion.   Although so much force as is reasonably necessary may be used, yet if the violence used is greater than was necessary, under the circumstances, to repel the assault or avert the peril, the party using it is himself guilty of an offense.   The law recognizes the right of self-defense for the purpose of preventing, but not of revenging, an injury to the person.

[16]   Where one is assaulted upon a sudden affray and, in the judgment of the jury, honestly believed, on reasonable and sufficient grounds, that he was in imminent danger of being killed or of receiving great bodily harm, he would have, in self-defense, the right to use a deadly weapon against his assailant.   But, in exercising such right, in a manner likely to cause death or great bodily harm to his assailant, he must be closely pressed by him, and must have retreated as far as he conveniently and safely could in good faith, with the honest intent to avoid the violence and peril of the assault.   If these be so sudden, fierce or urgent as not to allow him to retreat or to have other probable means of escape, then he may rightfully use a deadly weapon in his defense. *State v. Wilson, 5 Penn. 77, 62 Atl. 227.*

[17]   In further justification of his act of shooting, and as an element of his plea of self-defense, the prisoner contends that the deceased had the reputation of possessing a quarrelsome and violent nature, which reputation was known to the prisoner; and he seeks to excuse the manner and promptness in which he acted in his own defense, because of his fear arising from that knowledge, and of his fear of the deceased's advantage in size and strength.

Upon this phase of the defense the court follows the decisions recently made in the cases of *State v. Wiggins* and *State v. Lee*, (1 *Boyce* 18,) and charges you, that if you find from the evidence that an actual assault was first made by the deceased upon the prisoner, it is then proper and material to the issue raised by the plea of self-defense, for you to consider and determine whether

the prisoner was, at the time of the shooting, in reasonable fear of death or of great bodily harm.

[18] In determining what constitutes such reasonable fear, you should consider the conduct of the deceased just before the shooting, the violence of his assault, the character of the weapon he employed, his superior advantage of size and strength, if such existed, as well as the prisoner's knowledge of his assailant's reputation for being quarrelsome and violent.

[19] Where testimony respecting the guilt or innocence of the prisoner is conflicting, as it is in this case, you should reconcile it if you can. If you cannot do so, you should accept that part of it which you deem worthy of credit, and reject that which you deem unworthy of credit, having regard to the intelligence or ignorance of the witnesses, their opportunity to observe, know, hear and remember the matters and things to which they have testified, as well as any bias they may have arising out of interest or prejudice

[20] The good character of an accused person, when proved, is to be taken in connection with all the other evidence in the case, and is to be given just such weight, under all the facts and circumstances of the case, as in the judgment of the jury it is entitled to.

[21] In conclusion we say, that in every criminal prosecution the defendant is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt. In order to convict the prisoner it is incumbent upon the state to prove beyond such a doubt every material element or ingredient of the crime charged. If, after carefully considering and weighing all the evidence, you should entertain a reasonable doubt of the guilt of the prisoner, you should give him the benefit of such doubt, and your verdict should be not guilty.

[22] But proof beyond a reasonable doubt does not mean that the guilt of the accused must be established with the absolute certainty of a mathematical demonstration. Matters of fact are required to be proved to a moral certainty. To require more in dealing with human conduct, and the affairs of life, would be impracticable and therefore unreasonable. It is sufficient that

any disputed fact in the case shall be established by that amount of competent and appropriate evidence which will satisfy a fair and unprejudiced mind beyond a reasonable doubt.

Reasonable doubt in the legal sense, therefore, does not mean a vague, speculative or whimsical doubt, nor a mere possible doubt, but a substantial doubt, and such a doubt as intelligent, reasonable and impartial men may honestly entertain after a careful examination, and conscientious consideration, of all the evidence. If, after carefully and conscientiously considering all the evidence in the case you believe that the guilt of the prisoner has been established beyond such a reasonable doubt, your verdict should be guilty. If you are not satisfied beyond such reasonable doubt of the guilt of the prisoner, your verdict should be not guilty.

We may say further for your guidance, if you are satisfied beyond a reasonable doubt from the evidence that the prisoner killed the deceased with express malice aforethought, that is, with a sedate, deliberate mind and formed design to kill, and not in lawful self-defense, your verdict should be guilty in manner and form as he stands indicted, which is murder of the first degree.

If you are not satisfied that the prisoner is guilty of murder of the first degree, but are satisfied that he killed the deceased maliciously, without justification or excuse, your verdict should be guilty of murder of the second degree. If you are not satisfied that the prisoner is guilty of murder either of the first or second degree, but are satisfied that he killed the deceased unlawfully, in the heat of blood, or in a transport of passion, without time for reflection or for the passions to cool, your verdict should be guilty of manslaughter.

But, if you are satisfied from the evidence that the prisoner killed the deceased in necessary and lawful self-defense, your verdict should be not guilty.

Verdict, not guilty.