## Turner v. Commonwealth.

(Decided December 14, 1915.)

### Appeal from Logan Circuit Court.

1. Homicide—Instructions—Malice Aforethought.—In a trial under an indictment for murder, an instruction which advised the jury that it could find the defendant guilty of murder, in case they believed from the evidence to the exclusion of a reasonable doubt that he did the killing wilfully, feloniously and "maliciously," and not in his necessary, or apparently necessary, self-defense, was not erroneous; it is not necessary in such a case to instruct the jury that they must believe the killing was done with "malice aforethought," before they can convict. Tutt v. Commonwealth, 104 Ky., 299, overruled.

2. Homicide—Evidence—Admissibility.—Upon a trial under an indictment for murder, it is competent for the Commonwealth to show the fact that the defendant had had a difficulty with a person other than the deceased immediately before he killed the deceased; it is not competent, however, for the Commonwealth to go further and show the details of the difficulty, or go into the question as to who was in the wrong.

3. Criminal Law—Conduct of Counsel—What Does Not Justify Reversal.—The fact that the Commonwealth's attorney persisted in asking incompetent questions after the court had repeatedly ruled that they were incompetent, did not constitute a reversible error in this case, because the trial judge sustained the objections to the questions, and did not permit them to be answered; and the repetition of the improper questions was not of a sufficiently extravagant character to justify a reversal upon that ground.

S. R. CREWDSON and J. W. LINTON for appellant.

JAMES GARNETT, Attorney General, for appellee.

Opinion of, the Court by Chief Justice Miller— Affirming.

By this appeal Harrison Turner complains of a judgment of the Logan Circuit Court convicting him of the murder of Herschel Lewis, and fixing his punishment at confinement in the penitentiary for life.

It is not contended that the judgment is not supported by the evidence. It is insisted, however, that we should reverse the judgment of conviction, (1) because the court erroneously instructed the jury; (2) because of misconduct upon the part of the Commonwealth's attorney during the trial; and (3) because of the admission of incompetent evidence offered by the Commonwealth.

1. The instruction complained of reads as follows:

"The court instructs the jury that if they believe from the evidence to the exclusion of a reasonable doubt that the defendant, Harrison Turner, in Logan county, Kentucky, before the finding of the indictment herein, not in his necessary, or apparently necessary self-defense, unlawfully, wilfully, feloniously, and maliciously shot at and wounded one Herschel Lewis, upon his body and person, with a pistol, a deadly weapon, with the intent to kill the person so shot and wounded, and that the person died within a year and a day thereafter, then in that event the jury will find the defendant guilty as charged in the indictment, and will fix his punishment at death, or at confinement in the State penitentiary for life, in their discretion."

The complaint urged against this instruction is that it used the word "maliciously" instead of the phrase "with malice aforethought" in describing what character of act upon appellant's part in killing Herschel Lewis, would authorize a conviction for murder.

The indictment charges that "Turner did unlawfully, willfully, feloniously, and with malice aforethought, kill, murder, and slay Herschel Lewis," &c. But, in instructing the jury, the court substituted the word "maliciously" for the words "with malice aforethought," which were used in the indictment.

In Kennedy v. Commonwealth, 12 Bush, 348, where the instruction followed the usual form and required the jury to believe, from the evidence, that the killing was done with malice aforethought, in order to convict, the opinion incidentally remarked that "malice is one thing

and aforethought is another; but both are necessary to constitute murder, and the jury had been so told; and there is nothing in either of the instructions under consideration to indicate that the court meant that either might be dispensed with.''

In Shelton v. Commonwealth, 145 Ky., 546, and again in Watkins v. Commonwealth, 146 Ky., 451, 38 L. R. A. (N. S.), 1052, the instruction authorized a conviction for murder in case the killing was ''wilfully'' done, and this court condemned the instruction in each case, saying it should have required the jury to believe the killing was done wilfully, unlawfully and with malice aforethought, in order to convict of murder. But in each of the last two named cases the instruction required neither malice nor a felonious intent in order to convict; it only required that the killing should have been ''wilfully'' done. In none of the cases above mentioned was the condemned instruction similar to the instruction before us.

But in Tutt v. Commonwealth (1898), 104 Ky., 299, this precise question was passed upon, and the judgment of conviction was reversed, in an opinion by Judge Guffy, solely because the instruction in that case, as here, used the term ''maliciously'' in lieu of the phrase ''with malice aforethought.''

And the Attorney General frankly concedes that if we adhere to the ruling in the Tutt case, the judgment in the case at bar must be reversed.

So, we have for decision this important question: Is it necessary for an instruction upon murder to predicate a conviction upon a finding that the killing was committed unlawfully, wilfully, and ''with malice aforethought''?; or is an instruction sufficient if it authorizes a conviction for murder in case the killing was unlawfully, wilfully, feloniously and ''maliciously'' done? Blackstone follows Coke's definition that murder is the unlawful killing of any reasonable creature in being with malice aforethought, either express or implied, 4 Bl. Com., 195. And Blackstone further says that malice aforethought, or malice prepense, is the grand criterion which, in his day, distinguished murder from other killing. Ib., 198.

In Bouvier's Dictionary ''malice aforethought'' is said to be a technical phrase employed in indictments, which, with the word ''murder,'' must be used to distin-

guish the felonious killing called murder from what is called manslaughter. See also 1 Bish. Crim. Law., sec. 425.

In the description of murder, the words do not imply deliberation, or the lapse of considerable time between the malicious intent, but they rather denote purpose and design in contradistinction to accident and mischance. Commonwealth v. Webster, 5 Cush., 306, 52 Am. Dec., 711.

And the intent necessary to constitute malice afore-thought need not have existed for any particular time before the act of killing; it may spring up at the instant, and may be inferred from the fact of the killing. Allen v. United States, 164 U. S., 492. But premeditation may be an element showing malice when otherwise it would not sufficiently appear. 2 Bish. Crim. Law, sec. 667; Beauchamp v. State, 6 Blackf., 299; State v. Simmons, 3 Ala., 497.

Murder, at common law, being the killing of one human being by another, with malice aforethought, the words malice aforethought, in their legal sense, have often been defined to be the intentional killing of one human being by another, without legal justification or excuse, and under circumstances which are insufficient to reduce the crime to manslaughter. If this is a correct definition of malice aforethought, then it logically follows that murder is the intentional killing of one human being by another without legal justification or excuse, and under circumstances which are insufficient to reduce the crime to manslaughter. And, consequently, if the jury is told what constitutes legal justification or excuse, and what circumstances will reduce the killing to manslaughter, they have all the law they need to determine whether the particular homicide is murder or not, without the mention of the confusing words "malice aforethought."

Under this view, the term "malice aforethought" no longer serves any useful purpose in an instruction upon murder, while its use often causes trouble and confusion. The history of the term as used in the administration of the criminal law sustains this conclusion.

In dealing with the subject of malice, Sir James Fitzjames Stephen says:

"In reference to murder, 'malice' (the word 'afore-thought' is practically unmeaning), means any one of the following states of mind, preceding or co-existing with the act or omission by which death is caused:

"(a) An intention to cause the death of, or grievous bodily harm to, any person, whether such person is the person actually killed or not.

"(b) Knowledge that the act which causes death will probably cause the death of, or grievous bodily harm to, some person, whether such person is the person actually killed or not, although such knowledge is accompanied by indifference whether death or grievous bodily harm is caused or not, or by a wish that it may not be caused.

"(c) An intent to commit any felony whatever.

"(d) An intent to oppose by force any officer of justice on his way to, in, or returning from the execution of the duty of arresting, keeping in custody, or imprisoning any person whom he is lawfully entitled to arrest, keep in custody, or imprison, or the duty of keeping the peace, or dispersing an unlawful assembly, provided that the offender has notice that the person killed is such an officer so employed. * * *

"The result is that the word seldom if ever bears its natural sense (except it may be in some of the rules as to libel), and that if the law were codified it might with great advantage be altogether omitted from the criminal law. This course was taken both in the Indian Penal Code, and in the Draft Criminal Code of 1879.

"It may be worth while to notice the reason why the word 'malice' is unsuitable for the purpose to which it has been applied. It is that in its simple and natural meaning it has reference to the motives which prompt a man's conduct, and not to his intentions or actions. A 'malicious' act, according to the common use of language, is an act of which the motive is a wicked pleasure in giving pain. To make motive the test of criminality is always popular, because it tends to bring law into harmony with popular feeling, but it is open to the following conclusive objections:

"First, one great object of criminal law is to prevent certain acts which are injurious to society. But the mischief of an act depends upon the intention, not upon the motives of the agent. If a man intentionally burns down a house, or intentionally wounds the owner, the injury to the owner and the danger to others is equally great, whether the offender's motive was or was not one in which the public in general would be inclined to sympathise.

"Secondly, for the reasons already given, it is impossible to determine with any approach to precision, what were a man's motives for any given act. They are always mixed, and they generally vary.

"Thirdly, lawyers are so fully sensible of these considerations that when the word 'malice' is embodied in the definition of a crime the natural consequence of using the word is always evaded by legal fictions. Malice is divided into 'express' and 'constructive' or 'implied' malice, or, as it is sometimes called, 'malice in law' and 'malice in fact.' The effect of this fiction is that bad motives are by a rule of law imputed where intentional misconduct not prompted by bad motives is proved. It would obviously be simpler and more truthful to punish the misconduct irrespectively of the motive." 2 Hist. Crim. Law of Eng., 119.

Mr. Justice Holmes, in his book entitled "The Common Law," expresses the same idea in the following language:

"Malice, as used in common speech, includes intent, and something more. When an act is said to be done with an intent to do harm, it is meant that a wish for the harm is the motive of the act. Intent, however, is perfectly consistent with the harm being regretted as such, and being wished only as a means of something else. But when an act is said to be done maliciously, it is meant, not only that a wish for the harmful effect is the motive, but also that the harm is wished for its own sake, or, as Austin would say with more accuracy, for the sake of the pleasurable feeling which knowledge of the suffering caused by the act would excite. Now it is apparent from Sir James Stephen's enumeration, that of these two elements of malice the intent alone is material to murder. It is just as much murder to shoot a sentry for the purpose of releasing a friend, as to shoot him because you hate him. Malice, in the definition of murder, has not the same meaning as in common speech, and, in view of the considerations just mentioned, it has been thought to mean criminal intention.

"But intent, again, will be found to resolve itself into two things; foresight that certain consequences will follow from an act, and the wish for those consequences working as a motive which induces the act. The question then is, whether intent, in its turn, cannot be reduced to a lower term. Sir James Stephen's statement shows that

it can be, and that knowledge that the act will probably cause death, that is, foresight of the consequences of the act, is enough in murder as in tort.

"For instance, a newly born child is laid naked out of doors, where it must perish as a matter of course. This is none the less murder, that the guilty party would have been very glad to have a stranger find the child and save it.

"But again, what is foresight of consequences? It is a picture of a future state of things called up by knowledge of the present state of things, the future being viewed as standing to the present in the relation of effect to cause. Again, we must seek a reduction to lower terms. If the known present state of things is such that the act done will very certainly cause death, and the probability is a matter of common knowledge, one who does the act, knowing the present state of things, is guilty of murder, and the law will not inquire whether he did actually foresee the consequences or not. The test of foresight is not what this very criminal foresaw, but what a man of reasonable prudence would have foreseen."

And, again, in speaking of the terms "malice," "fraud" and "negligence," Stephen says:

"The three words 'malice,' 'fraud' and 'negligence,' enter into the definition of a large number of crimes, and it is proper to notice them here because they are the names of states of mind. Each is a somewhat vague and popular word, and the word 'malice' has in reference to particular crimes acquired by degrees a technical meaning differing widely from its popular meaning. The meaning of the word 'fraud,' as used in criminal law, is I think simpler and more definite than that of the word 'malice,' but it requires some explanation. The same may be said of 'negligence.'

"All these three words have one feature in common. They are vague general terms introduced into the law without much perception of their vagueness, and gradually reduced to a greater or less degree of certainty in reference to particular offenses, by a series of judicial decisions. In practice this has no doubt saved trouble to the legislature, and it has resulted in the establishment by the judges of a number of rules of various degrees of merit. The nature of the process and the vagueness of the words themselves, are best exemplified by translat-

ing 'malice' into its English equivalent, 'wickedness.'
A 'malicious libel' then becomes 'a wicked little book'
or perhaps 'a wicked written attack on character.' The
vagueness of such a definition is too obvious to require
illustration. It was veiled to a certain extent from peo-
ple in general by the tacit assumption that 'malice' and
'libel' were terms of art, the meaning of which was known
by lawyers. This has now become true by slow degrees,
and in consequence of innumerable decisions, but it was
far indeed from the truth when the words were first
used.''

In Pollock & Maitland's "History of English Law"
the same general view is expressed as follows:

"The word *malitia* is more general than the word
*assultus;* it is indeed a large word, equivalent perhaps
to our *wrong-doing,* and a larger word than *assault* is
necessary, because we may wish to state that the man
who is being pardoned for an excusable homicide was
guiltless, not only of an intentional assault, but of any
act intended to do harm. In course of time the term
*malitia* has brought many difficulties upon English law-
yers. Of these we must not speak, but we believe that in
this case it is rather the popular than the legal sense
of the word that has changed. When it first came into
use, *malitia* hardly signified a state of mind; some qual-
ifying adjective such as *praemeditata* or *excogitata* was
needed if much note was to be taken of intention or of
any other psychical fact. When we first meet with *malice
prepense* it seems to mean little more than intentional
wrong-doing.'' Vol. 2, p. 469.

And, in a note on the same page the same authors
further say:

"As to *malice (malitia),* this creeps into records and
law books as a vague word expressive of intentional
wrong-doing; but (though it would exclude harm done
by misadventure) it lays no strong emphasis on the in-
tention, and makes no special reference to spite or ha-
tred. See e. g. Bracton, f. 138 b, line 8; Note Book, pl.
687; Britton, i. 67, 83, 87, 89, 91. It was becoming com-
mon in Edward I.'s reign; but had, so it seems to us,
first become prominent in the numerous pardons that
were granted to those who were man-slayers by misad-
venture or in self-defense.''

History further shows that malice prepense (malice aforethought) was not an essential element of murder in early English law.

By the ancient common law, the distinction in felonious homicide between a killing with or without malice, was merely nominal, both being indiscriminately puneshed with death. It was said that although malice made the act more odious, yet it was nothing more than the manner of the act, and not the substance; and the term "manslaughter" was used to define the offense in both, cases.

Before the statute of 23 Hen. VIII. it was not necessary to allege the intent.

But the Act of 23 Hen. VIII. provided that if any person not actually in holy orders should be found guilty (among other crimes) of "any wilful murder of malice prepensed" he should be utterly excluded from the benefit of his clergy, and suffer death in such manner and form "as if he were no clerk."

So, from the time that benefit of clergy was, by the statute of 23 Hen. VIII., *supra,* taken away from murderers with "malice prepense," the latter phrase acquired a peculiar significance in English criminal law, and the more modern distinction between that most aggravated form of homicide and the inferior grades came to be recognized; and, at the period when we succeeded to the English common law, the legal definition of murder was well established as defined by Coke. From that time the term "malice prepense" or "malice aforethought" became indispensable in the definition of the offense of murder, as only a nominal punishment could be inflicted if malice were not established by the verdict; and it resulted likewise that the inferior grades of felonious homicide came to be called "manslaughter," while the capital offense was denominated "murder." And consequently, where a capital conviction was sought, it was said to be indispensable that the indictment should contain the words *ex malitia sua praecogitata interfecit et murdravit.* Darry v. People, 10 N. Y., 120; Coffee v. State, 3 Yerg., 283, 24 Am. Dec., 570.

The various definitions of the term "malice" as used in the law of homicide, have thrown the decisions of the courts into confusion; and, as it is of supreme importance that the crime of murder should be defined with clearness and precision, it is unfortunate that the words "malice"

or "malice aforethought," are written into the definition of the crime of murder at the present day.

If murder be the killing of one human being by another with "malice aforethought," either express or implied, the words "malice aforethought" must have a technical meaning, since it is obvious that they cannot apply, in their ordinary meaning, to many cases of murder.

If a father drowns his children to save them from the struggle for existence, he would be guilty of murder, although he could hardly be said to have been actuated by malice in the ordinary sense in which that term is used.

In Yong's case, 4 Coke, 40a, it was held that where upon an affray, the constable and his assistants went to suppress the affray, and preserved the peace, and in executing their office, the constable was killed, it was murder in law, although the murderer knew not the party that was killed, and although the affray was sudden, because the constable and his assistants went by authority of law to keep the peace and prevent the danger which might ensue by the breach of it. In such a case the law adjudged the killing to be murder, and that the murderer had "malice prepense," because he set himself against the justice of the realm. So, if the sheriff or any of his bailiffs, or other officers, is killed in executing the process of the law, or in doing their duty, it is murder.

Other acts which manifest no actual hatred or ill-will toward the person slain, or even an intention to take life, may constitute the crime of murder, and in such cases if the term "malice" is used, it is necessary to explain that it means much more in law than it does in common parlance.

In Darry v. People, 10 N. Y., 120, Judge Denio said:
"Though the words (malice aforethought) in their ordinary sense convey the idea of deadly animosity against the deceased, and by a strict interpretation would, perhaps, only embrace cases of a killing for motives of revenge, they were not so limited by the construction of the courts. All homicides, for which no excuse or palliation was proved, and a large class where there was no actual intention to effect the death of the person killed, were held to be murder. To justify these convictions an artificial meaning was attached to the words 'malice prepense,' by which they were made to qualify the taking of human life in all cases where sound

policy or the demerits of the offender were supposed to require that he should be capitally convicted. Hence, the definitions of murder to which I have referred contain the addition that the malice may be expressed or implied."

Malice, however, as applied to the offense of murder, need not denote spite or malevolence, hatred or ill-will, to the person killed; nor that the slayer killed his victim in cold blood, as with a settled design and premeditation; and the confusion in the cases arose from the attempts to distinguish between express and implied malice, in applying the definition of murder above given in the trial of cases.

Thus, in Wheatley v. Commonwealth, 26 Ky. L. R., 436, 81 S. W., 687, where the appellant was charged with murder in maliciously shooting at one person and killing another, the court held it was error to tell the jury that, in order to find the accused guilty of murder, it would be necessary for the jury to believe from the evidence, beyond a reasonable doubt, that the accused had malice towards the deceased. And if malice towards the deceased was not necessary to convict of murder, how can it be said the malice "aforethought" is necessary? As Justice Stephen well said, in the quotation above given, the word "aforethought" is practically unmeaning, in this connection.

The term "malice," therefore, in its legal sense, does not necessarily import ill-will towards the individual slain, but includes a general malignant recklessness of the lives and safety of others. People v. Lucas, 244 Ills., 603; State v. Short (Del.), 82 Atl., 239.

A favorite definition in Texas describes malice as a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken. Cain v. State, 42 Tex. Crim. Rep., 210.

In discussing Lord Holt's opinion in R. v. Mawgridge, Kelyng 166, decided in 1707, Stephen says:

"Mawgridge's case, in a few words, was this: Cope and Mawgridge quarrelled in Cope's room, and Cope desired Mawgridge to leave it. Mawgridge thereupon threw a bottle of wine at Cope, and hit him on the head, and drew his sword. Cope rose and threw another bottle at Mawgridge. Mawgridge gave Cope a mortal wound with his sword. This was, upon a special verdict, ad-

judged to be murder, and Holt took occasion to deliver a judgment which contains a history of the law relating to murder, and an elaborate discussion as to the meaning of malice aforethought, and the nature of the provocation necessary to repel the presumption of it which arises from a sudden intentional killing. Of Holt's history of the offence I will say only that it notices more or less fully most of the matters which I have already detailed. After stating it, Holt proceeds to state what is the true meaning of malice as follows:

" 'Some have been led into mistake by not well considering what the passion of malice is; they have construed it to be a rancour of mind lodged in the person killing for some considerable time before the commission of the act, which is a mistake arising from not well distinguishing between hatred and malice. Envy, hatred, and malice are three distinct passions of the mind.

" '1. Envy, properly, is a repining or being grieved at the happiness and prosperity of another. *'Invidus alterius rebus macrescit opimis.'*

" '2. Hatred, which is odium, is, as Tully says, *"ira inveterata,"* a rancour fixed and settled in the mind of one towards another, which admits of several degrees. It may arrive to so high a degree, and may carry a man so far as to risk the hurt of him, though not to perpetrate it himself.

" '3. Malice is a design formed of doing mischief to another, *'cum quis data opera male agit.'* He that designs and uses the means to do ill is malicious. 2 *Inst.,* 42—*He that doth a cruel act voluntarily doth it of malice prepensed.'* He then quotes Coke on the statute of 5 Hen. 4 c., 5, as to cutting out tongues and putting out eyes. I think that the words italicised define malice aforethought shortly, correctly, and happily. If the words were "cruel, or cruelly reckless," I think the definition would be as complete as so short a definition can be. If fully understood and applied I believe it would practically solve nearly all questions as to the distinction betwen murder and manslaughter, for on the one hand it shows that the words 'aforethought,' 'prepense,' 'deliberate,' in the established definition have no real meaning, inasmuch as the state of mind which causes the act must of necessity precede it. On the other hand, it would include the monstrous doctrine which Coke put forward and which Hale and Foster (in a

slightly mitigated form) repeat, that malice is always implied from an unlawful act which occasions death."— 3 Hist. Crim. Law Eng., 69.

Again, in his analysis of homicide, after pointing out that malice aforethought is a common name for either of the four states of mind preceding or co-existing with the act or omission by which death is caused, heretofore quoted, that same author says:

"By applying this definition of malice aforethought to the definition already given of unlawful homicide, we get the following results:

"In cases of unlawful homicide, death caused by an act or omission intended to cause bodily injury is murder, if the intention of the offender is to cause the death of, or grievous bodily harm to, any person whatever. It is manslaughter if the intention is to inflict bodily harm not grievous, unless the person on whom bodily harm is intended to be inflicted is an officer of justice engaged in the execution of his duty, or unless the offender is engaged in committing a felony, in each of which cases it is murder to cause death by the intentional infliction of any bodily harm whatever.

"Death caused unintentionally is murder if the unlawful act or omission by which death is caused is known to the offender to be eminently dangerous to life, or if the unlawful act amounts to a felony, or possibly if the person killed is an officer of justice in the discharge of his duty. In other cases the offense is manslaughter, if anything." 3 Hist. Crim. Law Eng., 22.

In Fisher v. State, 10 Lea, 151, the court, in defining murder in the second degree, used the word "maliciously" instead of the words "malice aforethought," and the court said that whether or not there is any difference in the exact meaning of the terms, they were used interchangeably in the criminal law, and signified the same thing.

Likewise, in, Cravey v. State, 36 Tex. Crim. Rep., 90, 61 Am. State Rep., 833, the court said:

"Malice, by writers, is frequently used as synonymous with 'malice aforethought.' This will be met with in charges to juries, and in text books. We are not holding that it is necessary, in defining malice aforethought in the charge, for the court to say 'malice aforethought.' The indictment having charged malice aforethought, the charge of the court defining express malice, and in the

proper case also implied malice, is sufficiently responsive to the allegation in the indictment, 'malice aforethought,' and it is not necessary to reiterate this term in the charge of the court.

"It has frequently been said by this court that the word aforethought means a predetermination to kill, however recently formed in the mind before killing."

Likewise, in Ewing v. Commonwealth, 129 Ky., 246; this court said that the words "malice aforethought" mean a predetermination to do the act of killing without legal excuse; and it is immaterial how suddenly or recently before the killing such determination was formed.

See also, Kriel v. Commonwealth, 5 Bush, 362; Jolly v. Commonwealth, 110 Ky., 190, 96 Am. St. Rep., 429; Clark v. Commonwealth, 111 Ky., 443; Freeman v. Commonwealth (Ky.), 118 S. W., 917, to the same effect.

It would seem naturally to follow, therefore, that there is no distinction between malice in its technical sense, and malice aforethought. They are used indiscriminately to express the same idea. When it is stated in the decisions that there is a distinction between the term "malice" and the words "malice aforethought," it is not meant that there is any difference in the meaning of those terms in their technical sense, but that the word "malice" in its popular meaning differs from the meaning of the technical words "malice prepense" or malice "aforethought."

To constitute malice aforethought, no particular time need intervene between the formation of the intention and the act. If the malice exists it is sufficient, and the deliberate intention called "malice aforethought," need be only such deliberation and thought as to enable a person to appreciate and understand, at the time the act is committed, the nature of his act and its probable result. It is enough that with the intention to commit the act, the appreciation of the result likely to follow appeared to the defendant at the time the act was committed. It does not follow because the killing was the result of the prompt and speedy execution of a hasty or immediate resolution, that it may not have been done with express malice. As has been well said, the law has no scales to measure the time in which a sedate, deliberate mind may reach and form a design to kill or do some serious bodily injury, which may probably result in death. When such a design is once formed, the haste with which it is put

into execution in no way affects or modifies the character of the act, or the degree of guilt thereby incurred. Nichols v. Commonwealth, 11 Bush. 575; Green v. State, 13 Mo., 382; State v. Deckollts, 19 Iowa, 447; Margens v. People, 173 Ills., 43; Perry v. State, 102 Ga., 365; Talley v. State (Ala.), 57 So., 445; State v. Ashley, 45 La. Ann., 1036; People v. Borgetto, 99 Mich., 336; Combs v. Commonwealth, 33 Ky. L. R., 1058, 112 S. W., 658.

This conclusion was reached in the late case of State v. McGuire, 84 Conn., 470, 38 L. R. A. (N. S.), 1045, where the jury were instructed to find the defendant guilty of murder in case it believed, beyond a reasonable doubt, that the defendant attacked his opponent with intent to kill him, and that the attack was with malice, which, as defined by the court, included all those states of mind in which homicide is committed without legal justification, extenuation or excuse.

In the opinion, the court said:

"It is claimed that malice, and not malice aforethought, had been defined to the jury, and that they must have been mislead by the charge. It is true that the jury were not told that malice aforethought means malice prepense, and that it must exist prior to the assault and cooperate with it. But they were told that to convict they must find that the attack was made with malice. Under this instruction, the jury to convict must have found that malice existed prior to the assault, which satisfies the defendant's claim. It was not the duty of the court to define the term 'aforethought.' It has been said by high authority, and we think correctly, that it is practically impossible to so define and explain the term 'malice aforethought' as to bring it within the comprehension of the average juror. In most cases a more practical and helpful charge can be given without any attempt to define the crime charged, or the elements of it, to the jury. They are to find the facts in the particular case before them. The court is to apply the law to the facts. As we said in Morris v. Platt, 32 Conn., 75, 82, it is not for the juries to apply 'great principles' to the particular facts claimed and found. That is for the court. As the court speaks in advance of the finding, its duty can best be performed by calling the jury's attention to the evidence and claims and telling them what the conclusion of the law is upon each state of facts which they may be warranted in finding upon the evidence and instructing

them as to the verdict which they should render upon each of the states of fact which may be found. The jury's attention is thus directed to what is helpful to them in the performance of their duty, and they are saved from the embarrassment and confusion which is likely to result from a mass of definitions which are, in most cases, of little practical value to them in reaching a verdict.

"The court in the present instance not only gave the customary charge as to malice, but told the jury that it included all those states of mind in which a homicide is committed without legal justification, extenuation, or excuse. A practical definition of malice aforethought was thus given them, which, under the circumstances of the case, was a far better guide to a correct determination of the case than the most elaborate discussion of the subject would have been. There was no claim that there was any justification or excuse for the assault, or any circumstances which, if it was committed by the accused and death had resulted, would have extenuated the crime and reduced it to manslaughter. The defense was that the defendant did not commit the assault. The jury must have found that he committed it, and with the intent to kill; and as there were no circumstances of justification, extenuation, or excuse before them, no harm could have come to the accused, had the court, in fact, failed to tell the jury what malice aforethought is.

"Under early English statutes denying benefit of clergy, the crime of murder was practically limited to cases of wilful, deliberate, and premeditated killing, and it was then essential that the indictment should charge that the accused committed the homicide with malice aforethought. At this time the *malitia praecogitata* essential to the crime was express malice existing prior to and inspiring the killing. When later it was held by the courts that this malice could be implied, the effect was to extend the crime of murder so as to include cases which were not deliberate and premeditated. And it has so remained. After the crime had been thus extended, the words 'malice prepense' or 'malice aforethought,' in their strict literal sense, did not accurately define the crime. The approved definition of murder, however, has continued to be 'the unlawful killing of a human being with malice aforethought;' and it has been customary to define malice aforethought in trials for unlawful homicide or attempted unlawful homicide; as well since the re-

peal of the English statutes referred to as before their repeal, when it was an indispensable ingredient of the only kind of murder known to the law, that is, a wilful, deliberate and premeditated killing.

"In the light of its historical development, and in view of the difficulty of so stating the subject as to give the jury a fair comprehension of it, it is the better way in charging the jury for the trial judge not to attempt such definition, further than to say that while malice aforethought is one of the necessary ingredients of the crime of murder, if they find proven beyond a reasonable doubt the commission of a homicide, and that it was perpetrated without legal justification or excuse, and without circumstances of legal extenuation, the crime proved is murder. It would then be unnecessary to attempt the definition of murder or malice aforethought, or to tell the jury that malice is implied from such a killing."

The subject is considered at length in the note to State v. McGuire in 38 L. R. A. (N. S.), 1045. In many ways the rigid technicalities of the criminal law originally served a useful purpose in protecting persons from the extreme harshness and unreasonable penalties of that law; but under the modern criminal law antiquated rules and distinctions which serve no useful purpose, have no proper place.

We conclude, therefore, that in the sense the terms are used in giving instructions on the law of homicide there is no material or justifiable distinction between "malice" and "malice aforethought." Malice as applied to any act, must necessarily have pre-existed; it would be absurd to speak of it as having arisen subsequently to the act which it induced.

We see no error in the instruction complained of; and, Tutt v. Commonwealth, 104 Ky., 299, being in conflict with the conclusion now reached, is overruled.

2. It is further objected that the Commonwealth's attorney was guilty of such misconduct in examining witnesses as to warrant a reversal.

First, it is insisted that the court erroneously permitted the Commonwealth to show that appellant had a difficulty with Vander Lewis, a near relative of Herschel Lewis, immediately before the killing.

The court, however, only permitted the Commonwealth's attorney to show the fact that there had been a difficulty between Turner and Vander Lewis; it did

not permit him to show or detail the circumstances or merits of the difficulty. This was not error, since the difficulty was, really, a part of the history of the case. It was competent for the Commonwealth to show the fact of the difficulty, although it would not have been competent for it to go further and show the details of the difficulty, or go into the question of who was in the wrong.

3. It is further claimed that the Commonwealth's attorney persisted in asking incompetent questions after the court had repeatedly ruled that they were incompetent, and that by his repetition of the questions, this incompetent evidence was, in effect, put in evidence.

In support of this contention, appellant relies upon the opinion of this court in L. & N. R. R. Co. v. Payne, 133 Ky., 539. But the conduct of the Commonwealth's attorney in the case before us was not of the extravagant character condemned in the Payne case, *supra*. The action of the Commonwealth's attorney, which is here criticised, was his alleged effort to bring before the jury, by repeated questions, the details of the difficulty between the appellant and Vander Lewis, in order to show that appellant was in the wrong in that affair. But the trial judge excluded all of this testimony; and, although it was asked in different ways more than once, the act of the Commonwealth's attorney did not amount to such misconduct as would justify a reversal of the case.

Judgment affirmed.