## Mink v. Commonwealth.

(Decided March 22, 1929.)

MARTIN T. KELLY and ED PHILPOT for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney-General, for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant, Fred Mink, charged with murder, was convicted of manslaughter, and his punishment fixed at confinement in the penitentiary for a period of 10 years.

The chief ground upon which he relies for a reversal is that the verdict is flagrantly against the evidence. That this ground is wholly without merit a brief statement of the facts will clearly demonstrate:

Appellant shot and killed Bill Ellis at the home of the latter's brother, Gabe Ellis, who resided on Black Snake creek, a tributary of Puckett's creek, in Bell county. Appellant lived with his brother-in-law, Henry

Jackson, about four miles from the Ellis home. On Sunday, June 17, 1928, he and Jackson walked to the home of Gabe Ellis, where they found the deceased, several members of Gabe Ellis's family, and a number of other persons. According to the witnesses for the commonwealth, appellant and Jackson arrived at the Ellis home early in the afternoon, and the shooting occurred between 4 and 5 o'clock in the afternoon. According to appellant, they arrived about 3 o'clock. During the course of the afternoon, most of those present, if not all of them, became more or less intoxicated. The shooting took place in the house, which consisted of three rooms, including the kitchen.

According to the witnesses for the commonwealth, the deceased, appellant, Gabe Ellis, his wife, Lizzie, and daughter, Sarah, were in the kitchen. Two shotguns were lying on a bed in the adjoining room. The deceased got one of the guns, returned to the kitchen, fired one shot into the end wall of the kitchen, then fired twice through an open window, turned and went into the adjoining room, and walked toward a door which opened onto a porch. Appellant followed him, picked up the other shotgun, and fired twice at the deceased. One charge of shot struck the deceased in the back near the point of his shoulder blade, and one struck him in the right side. At the time deceased was shot, he had the shotgun that he had just fired; but it was at his side, with the muzzle pointing downward, and he was facing the door opposite the kitchen, with his back toward the appellant. One of the charges from appellant's gun shot off the stock of Ellis' gun. Ellis fell near the door leading onto the porch.

Sarah Ellis testified that about an hour before the shooting occurred the appellant said "he wished somebody would start a racket, so he could go in and end it." Sarah Boatwright testified that shortly before Ellis was killed appellant "walked up and patted Sarah Ellis on the shoulder and said: 'For a little I would raise a racket and kill about half of them, and you would kill the other half.'"

Appellant testified that, while he was standing in the kitchen, the deceased, without any warning or without any words having passed between them, fired at him three times from the adjoining room and that he ran into the room, picked up a shotgun that was lying on a bed,

and fired twice at deceased while the latter was facing him and in the act of shooting at him a fourth time.

The physical facts support the witnesses for the commonwealth. Had the deceased been facing appellant, with his gun in position to shoot, as appellant claims, he could not have been shot in the back and the right side. The case was clearly one for the jury, and we can conceive of no verdict the jury could have conscientiously returned under the evidence, other than one of guilty.

Appellant complains because the witness Britt Howard was permitted to remain in the courtroom during the trial, while all other witnesses not under examination were excluded. The attorney for the commonwealth requested that Howard be permitted to remain in the courtroom; the defendant objected on the ground that he was interested in the prosecution of the case, and the objection was overruled. Section 601 of the Civil Code provides that the judge may exclude from the courtroom any witness of the adverse party not at the time under examination. Exclusion of witnesses from the courtroom is a matter of discretion, and the judge may permit a witness to remain, if his presence is necessary to enable a party to properly present his case. Music v. Commonwealth, 186 Ky. 45, 216 S. W. 116; Render v. Commonwealth, 206 Ky. 1, 266 S. W. 914. Howard only testified as to the location of the wounds on the body of the deceased, which he examined on the day after the killing. A number of other witnesses testified to the same facts, and there is nothing to show that appellant's rights were prejudiced because Howard was permitted to remain in the room.

It is also suggested that the trial court should have instructed the jury that the defendant was presumed to be innocent until his guilt was shown beyond a reasonable doubt. The usual instruction on reasonable doubt, substantially following the language of section 238 of the Criminal Code, was given, and that was all to which the defendant was entitled. An instruction as to reasonable doubt in substantially the form contended for by appellant was criticised in Brown v. Commonwealth, 198 Ky. 663, 249 S. W. 779, and it was there said that the court should not tell the jury that the law presumes the innocence of a defendant, but the instruction should always follow, in substance, the language of the Code.

Judgment affirmed.