## Wood v. Commonwealth.

(Decided Jan. 20, 1933.)

830

B. J. BETHURUM and E. T. WESLEY for appellant.

BAILEY P. WOOTTON, Attorney General, FRANCIS M. BURKE, Assistant Attorney General, and J. S. SANDUSKY for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

Ferd Wood was indicted in the Pulaski circuit court for the willful murder of Willie Smith. On the trial of the case he was found guilty of voluntary manslaughter and his punishment fixed at ten years' imprisonment. He appeals.

Ferd Wood, Jack Edwards, and Ed Hargis were deputy sheriffs of Pulaski county. Guy Tuggle was the federal prohibition officer. The homicide occurred in August, 1932. Some months before this Willie Smith, who was twenty-seven years old, had been charged with detaining a woman with intent to have carnal knowledge of her. The warrant had been issued for his arrest and placed in the hands of one of the deputy sheriffs, who had made diligent efforts to catch him, but had been unable to do so. Some weeks before the homicide a warrant had been issued against Willie Smith by the federal prohibition authorities charging him with manufacturing intoxicating liquor, which is also a felony. On the morning of the homicide, two warrants were issued against Willie Smith, charging him with unlawfully selling intoxicating liquor, and put in the hands of the sheriff. The three deputy sheriffs, above named, and Guy Tuggle, the federal prohibition agent, then got in a car and went out about eight miles to the neighborhood of Smith's home. When they reached the house of Milford Sears, they saw him in the yard.

As soon as he saw the officers, he ran behind the house; they pursued him, calling on him to halt; and some of them fired in the air. He outran the officers, and, though they followed him an hour or more, they could not find him. They then returned to their car and went to the post office Shopville, and, as they drove in, they saw Smith there. When he saw them, he ran behind the church. They saw him and called on him to halt, but he was fleet of foot, and gaining on them, running across a field toward the woods, when he was shot and killed by Ferd Woods. The above facts are undisputed.

The proof for the commonwealth showed these facts: In searching for Smith, the officers went to the house of Billy Hargis, who lived about half a mile from Sears. Smith had passed there and had gotten out of sight when the officers got there. The commonwealth proved by three or four persons, who were there when the officers came, that Ferd Wood then said, "If I get in gun reach of him any more he is my man," or as another witness puts it, he said, "He has been running all evening and if he got in gun shot range any more he was going to kill the son-of-a-bitch." The commonwealth also proved that, when Wood got out of the car at Shopville, when they saw Smith go around the church, he came back to the car and said to one of the officers, "Give me your pistol I will fix him." Wood and Edwards ran together in pursuit of Smith from the church yard. Wood, while running, drew his pistol and shot in the air, calling on Smith to halt. The commonwealth proved that Edwards then said to him twice, "Don't shoot," Wood stopped running, took his pistol in both hands, levelled it at Smith, and shot a second time. Smith then threw up his arm; ran a few yards further, and fell twice. He was shot in the back, and died immediately after he fell the second time. Wood's pistol was a .38 and the commonwealth showed that he was 131 yards from Smith when he fired the second shot.

On the other hand, the defendant testified that he did not make any threats at the house of Billy Hargis or say anything of this sort. He sustained his testimony on the subject by the other officer who was with him at the time. He denied asking for the pistol at the car or saying anything about shooting anybody, and

sustained his testimony on this subject by the other officers in the car, who said that one of the other officers called him back to get his pistol and he said nothing. He testified that he was 200 yards or more from Smith when he fired the pistol; that he thought Smith was beyond the range of the pistol when he shot, and only fired to make him stop; that he did not stop running at any time, but was running all the time, and that he simply fired the pistol in the air, or tried to do so. His testimony that he was running when he fired the second shot is sustained by the other officers who were present. Edwards was the first man to reach Smith. He came right up to him as soon as he fell. Wood reached Smith just afterwards. When Wood came up, he said to Edwards, ''Be careful he might shoot you'' or some such words. Edwards replied, ''No, he is shot.'' Wood then said to Edwards, ''I wouldn't have done it for the world, for no amount of money; that it was an accident.'' This occurred, according to one witness, within a minute after the shooting, according to another witness within two minutes afterwards. It was said by Wood to the first man he met after the shooting. The court sustained the objection of the commonwealth to what Wood then said. The defendant excepted, and this is one of the grounds relied on for reversal. The defendant proved by himself and Edwards that Edwards said to him, ''Don't shoot,'' after the second shot had been fired, and not before, and after they saw, by his throwing up his arm, that Smith had been wounded.

The defendant testified that he did not know the deceased personally, and had never had anything to do with him, and this is uncontradicted. There was no evidence showing any motive for the killing, except as above stated. The officers did not have the felony warrants with them, but Wood had seen the warrant for detaining a woman, and was instructed by the county judge and county attorney to arrest and hold him on this charge; the deputy who had the warrant being away for the day.

Smith was at Sear's house that day planning flight to Canada and trying to get Sear's son to go with him when the officers appeared there, and he then boasted that he had run off from the officers seven times.

By instruction No. 1 the court defined the words

"willfully," "feloniously," etc. Instruction 2 was the usual instruction on murder; 3, on voluntary manslaughter; 4, on involuntary manslaughter; 5 and 8 on reasonable doubt. These instructions are not complained of. The only other two instructions given are 6 and 7, which are in these words:

(6) "The court instructs the jury that the defendant, Ferd Woods, was at the time of the killing, a deputy sheriff and if the jury shall believe from the evidence that at the time complained of that the defendant had reasonable grounds to believe that the deceased, William Smith, had committed a felony, by unlawfully and feloniously detaining Grace Turpen, a female, against her will and consent, and with the intent to have carnal knowledge of her himself, then the defendant had a right to arrest the deceased without a warrant of arrest and it was his duty so to do; but in making the said arrest it was the duty of the defendant, or any of those associated with him in the attempt, to inform the said William Smith, if he gave them reasonable opportunity so to do, of the purpose to arrest him and the character of the charge against him, unless the deceased already knew of the offense charged against him, and it was his duty to peaceably submit to arrest.

"In making the said arrest, the defendant, Ferd Wood, was authorized to use such force and such force only, as was necessary, or that appeared to him to be necessary in the exercise of a reasonable discretion, to effect the said arrest, even to shooting the deceased and killing him in flight, and if the jury shall believe from the evidence, that the shooting and killing of the deceased William Smith occurred under the manner and circumstances as set out in this instruction, then said killing was excusable, and the jury will find the defendant not guilty.

(7) "If the jury shall believe from the evidence beyond a reasonable doubt, that the shot fired by the defendant, Ferd Wood, that killed the deceased, William Smith, was not fired by defendant in a good faith effort to halt, stop and place the deceased under arrest, but was fired by the defendant with the willful, felonious, and malicious

intent to take the life of the deceased, then the defendant cannot justify the killing under instruction No. 6.''

The statement that Wood made to Edwards as they approached Smith, within a minute or two after the shooting, was not only made to the first person that Wood saw, but just as soon as he learned that Smith was shot. Nothing had occurred between the time of the shooting and this statement, except that they had hastened up to where the man had fallen. Under such circumstances, the statement was competent as a part of the res gestæ. Holding such a statement competent in McCandless v. Com., 170 Ky. 310, 185 S. W. 1100, 1104, the court said:

"The declaration that he was compelled to shoot because the deceased was attempting to draw a deadly weapon upon him was made immediately after the shooting and before sufficient time had elapsed to enable accused to formulate a narrative to help him in his claim of self-defense; it grew out of the litigated act and is an illustration of it, and was the first declaration made by him. Galloway v. Com., 4 Ky. Law Rep. 720; Galloway v. Com., 5 Ky. Law Rep. 213; Ross v. Com., 55 S. W. 4, 21 Ky. Law Rep. 1344.''

In Clem v. Com., 198 Ky. 486, 248 S. W. 1036, 1037, where, as here, an officer had shot a man, the officer's statements to the first person he met, within a minute or two of the trouble, was held competent, the court said:

"Men do not, under stress of great excitement in such conditions, frame up evidence for their future purposes, and for this reason such things are competent either for or against one charged with crime. Such occurrences are a part of the thing itself, and are so intimately and closely connected in time with it as not to be severable from it. We find no difficulty in holding that this evidence was competent, and the court erred in excluding it. 34 Cyc. 1642.''

In Jarvis v. Com., 245 Ky. 790, 54 S. W. (2d) 307, a similar statement by the defendant just after the homicide was proved by the commonwealth, and the evidence was held admissible on the ground that, being res gestæ, it was competent to show the defendant's

state of mind and the intent with which he did the shooting. In McLeod v. Ginther, 80 Ky. 399, a statement by the engineer, just after two trains collided, as to his being within the time given him, was held admissible. A number of authorities are collected in that opinion which has been followed in many subsequent cases. See Caldwell's notes; Travelers' Ins. Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437.

This evidence was very important for the defendant, for it tended to show his intentions at the time and what he had in mind, as was held in the Jarvis Case, supra. The fact was shown by more than one witness, and the evidence, if admitted, may have had great weight with the jury in spite of the many contradictions in the testimony.

The commonwealth introduced Willie Jones as a witness, who testified over the defendant's objection that three weeks before the homicide the defendant arrested him on a cold check charge, which is a felony, and he ran off from him and got away; that shortly after this he met the defendant, and the defendant said to him, "The next one that runs off from me I am going to kill him; I am not going to run a step." He also testified that later and shortly before the trial the defendant said to him, "If you come up and testify against me I will kill you," and when he said that he threw his hand on his gun.

It is earnestly insisted by the appellant that all of this was incompetent, as it had no connection with this case, but evidence that the defendant had threatened to kill any man that ran off from him was competent as showing his state of mind, and the evidence that he had endeavored to prevent a witness from attending the trial was also competent; for an attempt to suppress evidence may be the result of a sense of guilt. Burns v. Com., 198 Ky. 319, 248 S. W. 848; Wireman v. Com., 206 Ky. 828, 268 S. W. 586.

Appellant did not offer any evidence as to good character. The commonwealth at the close of the testimony for him, introduced six witnesses who testified that his general moral character was bad. The appellant then introduced six witnesses who testified that his general moral character was good. On the cross-examination of these witnesses, they were asked by the prose-

cution if they had heard that he had killed Jim Pierce or had heard that he killed a man in Oklahoma, or that he was in partnership with Collins in the liquor business. To all of this the defendant objected. At the conclusion of the evidence, the court expressly instructed the jury that the questions and answers as to Wood being a partner with Collins, to the witness who had not heard of this, should not be considered by them for any purpose, and were withdrawn from their consideration, also that the question and answer as to this, asked the witnesses who had heard of it, should be considered only in so far as it affected the accuracy of the witnesses' information as to the moral character of appellant, and for no other purpose. He also gave a like instruction as to the questions and answers of the witnesses relating to the killing of Pierce.

It is earnestly insisted for the appellant that he was denied a fair trial by reason of the lugging of these other matters into the case. The evidence as to the appellant's general moral character was only competent to affect his credibility as a witness. He may not be convicted of an offense because he is a man of bad moral character. In Fugate v. Com., 211 Ky. 705, 277 S. W. 1029, 1031, the court thus stated the rule as to such evidence:

"If all the witnesses answer the questions in the negative, the court should exclude them, and admonish the jury that they cannot be considered for any purpose. If the witness answers in the affirmative the court should substantially tell the jury that the matters referred to in those questions are not in issue, and that the answers of the witness are not to be regarded as evidence of the truth of such matters, or as evidence of any substantive fact, but that they may be regarded by the jury in considering the credibility and accuracy of the witness and for no other purpose."

In the recent case of Shell v. Com., 245 Ky. 223, 53 S. W. (2d) 524, 527, the question was again before the court, and the court said:

"Another important rule of practice applicable to evidence as to the defendant as a witness and not to the accused as a defendant is that it is the duty of the court to admonish the jury that this sort of

evidence should be considered only for the purpose of affecting the credibility of the defendant as a witness, if it does so, and not as evidence conducing to prove his guilt of the crime charged. Otherwise, in a doubtful case, the evidence may be regarded as showing probability of guilt, and the defendant may be convicted because of his bad name. But where the omission so to admonish the jury is not called to the attention of the court by objection, exception, or motion of the defendant, it is not regarded as a reversible error, unless it appears from the whole record that the substantial rights of the defendant were thereby prejudiced.''

In this case the appellant did not ask the court to admonish the jury further or call the matter to his attention in any way. In view of the clear ruling of the court and the failure of the appellant to ask anything further, the court is unable to see that there was any substantial error here to appellant's prejudice. The warrant for the arrest of Willie Smith for manufacturing intoxicating liquor was in the hands of the United States marshal, and the prohibition officer did not have it. The appellant offered to prove the fact that this warrant was issued and in the hands of the United States marshal; the court excluded this evidence. The evidence should have been admitted, because it served to explain the conduct of Guy Tuggle, and showed why he was along and taking part in the arrest of Smith, as he had sworn out this warrant and wanted Smith arrested. The fact that this warrant had been issued threw light on the conduct of Smith and of the officers. The proof set the jury in the light of the facts confronting the officers.

The attorney for appellant in making his argument to the jury said this:

''From the way Guy Tuggle demeaned himself on the witness stand and the clear evidence given by him, it showed that every word he swore was the truth.''

To which statement the commonwealth attorney objected. The objection was sustained by the court, and the jury admonished not to consider the statement of counsel with reference to the evidence of Guy Tuggle, to which ruling of the court the defendant by counsel

excepted at the time, and offered to proceed in the discussion of Tuggle's testimony along the same lines; but the court declined to permit him to do so, to which ruling of the court the defendant by counsel objected and excepted at the time. This was legitimate argument, and the objection was improperly sustained. Tuggle's testimony was very important for the appellant, as he was present and saw all the facts, and the ruling of the court may have been prejudicial to the appellant before the jury. After the jury had been out over a day, the court was informed that they could not agree. Thereupon the court had them brought into the courtroom and urged them to make a verdict, if they could do so, that would be fair and just to the commonwealth and to the appellant. Appellant earnestly complains of this, but the words of the court were practically the same as in the case of Taylor v. Com., 240 Ky. 450, 42 S. W. (2d) 689. But that case was reversed on other grounds, and the question was not decided, and, as this case must be reversed on other grounds, it is unnecessary to further consider it here, as this probably will not occur on another trial.

Appellant earnestly insists that instruction No. 7 was erroneous, and should not have been given. It is insisted that, if the appellant fired the shot in order to make the arrest, and when it was necessary to do so to prevent the felon's escape, he was not guilty, although he fired the shot with malicious intent, and that this instruction was very prejudicial, in view of the evidence, which the commonwealth had introduced, showing threats by the appellant as to what he would do. The court does not see that the instruction was erroneous. The words "willful" and "feloniously" were correctly defined in instruction 1, as follows:

"The words 'willful' or 'wilfully' as used in these instructions mean intentionally and not accidentally or involuntary. The words 'felonious' and 'feloniously' as used in these instructions mean proceeding from an evil heart or purpose, done with the deliberate intention of committing a crime."

The two instructions must be read together, for to know what the court meant by these words the jury must be guided by the court's definition of them.

On the whole case the court concludes that a new trial should be granted.

Judgment reversed, and cause remanded for further proceedings consistent herewith.