## Taylor v. Commonwealth.
(Decided March 1, 1938.)

CHARLES B. SPICER and E. BERTRAM for appellant.

HUBERT MEREDITH, Attorney General, and WILLIAM HAYS, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

Hugh Taylor was convicted of manslaughter by a jury in the Harlan circuit court of the killing of Robert Moore, and his punishment fixed at 18 years' confinement in the state penitentiary. He appeals from the judgment declaring him guilty. His grounds for reversal are: (1) That the court erred in overruling his petition for a change of venue; (2) in sustaining objections to the cross-examination of certain witnesses of the commonwealth tending to show bias and prejudice of the witnesses; and (3) in instructions to the jury objected to at the time by the defendant.

The court has reached the conclusion that the judgment must be reversed because of errors in the instructions; therefore, it is deemed unnecessary to pass upon the other alleged errors, if they were errors, because they may not occur again on another trial.

On July 19, 1936, in Clarence Poer's restaurant in the village of Pansy, Harlan county, Ky., on Sunday night about 8 o'clock, Robert Moore was shot and killed by appellant. The appellant Taylor and Moore were neighbors, living so closely to each other that Moore obtained water for the use of his family from the well of Taylor. This neighborly situation had existed for some time. Just before the killing, for some reason not fully explained, the pump on Taylor's well was broken, or at least parts of it. The Moore family came to the conclusion that Taylor disabled the use of the pump purposely, indicating that the privilege of getting water from his well was no longer approved. This friendly and neighborly relationship apparently terminated. Appellant and his wife on the Sunday of the killing returned from a visit to friends and relatives in Virginia. Taylor was

a deputy sheriff of Harlan county at that time. Soon after reaching his home Taylor obtained information from a neighbor that Robert Moore was in the village of Pansy and in the vicinity thereof drunk and disorderly. He was asked by his neighbors, as an arresting officer of the law, to go and arrest Moore. He then armed himself and went to the vicinity where he was informed Moore was, for the purpose of arresting him, but failed to locate him. He then was advised that there was some disturbance in the restaurant of Clarence Poer in the village of Pansy. He then went to the restaurant and there found Moore and as many as fifteen other persons in the restaurant. W. H. Thacker, a witness for the commonwealth, in substance, stated that when Taylor came into the restaurant, Moore was standing talking to someone; that he was sober and orderly; that Taylor had his gun in a shooting position; that Moore was saying and doing nothing at the time; that Taylor at once shot Moore down; that Moore made no effort to draw a pistol or to do anything to Taylor. The witness was sitting on a bench only a few feet from Taylor when he shot Moore. Practically the same testimony was given by Dan Johnson and Buck McKeehan, except McKeehan said he saw Moore with a pistol after he was shot by Taylor, but he did not attempt to shoot. After Moore was shot he fell to the floor practically dead. Taylor then bent over his body, took his pistol, and laid it down on a victrola that was in the restaurant. Taylor then went out of the restaurant. On cross-examination McKeehan said that Moore had the pistol in his hand gripping the handle. The hammer was moving, but it did not come back far enough to shoot. When he saw him (Moore) with the pistol, he had already been shot. He did not hear Taylor say to Moore that he was under arrest. Frank Lawson testified that when Taylor came into the restaurant he (Lawson) and Moore were standing talking near a radio. In a short time Taylor turned and talked to the witness, Lawson, a few minutes. Taylor then walked away and around behind his back; he then heard someone say: "Robert Moore, I have to put you under arrest," but he did not know who said it. He then turned around to see. Moore, at that time when he turned, had his hand in his overall bib, but he saw no pistol. He then started to go out of the restaurant and, as he did so, heard one shot fired, but did not see who fired the shot. On cross-examination, he

said that he heard someone say, "You are under arrest"; Moore had his hand, when he turned around, under his overall bib, and was coming out with his hand when Taylor fired. Tom McDaniels said he saw the shooting; saw Taylor come into the restaurant; that after doing so, saw him talking to someone in the restaurant, but he did not know who it was. He heard nothing said. Moore said nothing and did nothing. Immediately, he heard the report of a pistol. He then looked and saw Moore falling to the floor. Taylor was standing with his pistol in his hand. He did not see Moore with a pistol at the time he fell, but he had both hands over his heart. He did not see Taylor get a gun off of Moore after he was shot. Roy Nelms said that he was present; that he saw Taylor when he came into the restaurant; heard him tell Moore that he was under arrest, and when he did so, saw Moore jerk his hand back and put his hand in his overall bib; then Taylor shot him. T. R. Middleton stated that before the shooting took place Taylor told him that he was "going to have trouble with Moore." On the night of the killing and immediately after it was done, Taylor came to his home and told him that he had killed Moore at Poer's restaurant in the saloon; that he started to arrest him and had to kill him. At another time Taylor said to him:

"At the time he killed Robert Moore he thought he was drunk; that he was standing over in the corner, and that he wasn't doing anything at the time he killed him; * * * that it looked like he couldn't stay out at Pansy; that he or Robert Moore had to leave there."

George Lee testified practically to similar statements made by Middleton. John Jess Saylor was asked and answered as follows:

"Q. I will ask you to state whether or not in the presence of George Lee you heard the defendant, Hugh Taylor, make any statement about Robert Moore or Pansy at any time before Robert Moore is said to have been killed? A. Yes, sir.

"Q. What was it you heard him say? A. I walked in the sheriff's office and I had some papers and walked in there to find out from George Lee where they lived up here, and him and Mr. Taylor was talking and I heard Mr. Taylor say: 'I have

had trouble with that fellow 'Moore.' and he said: 'The next time he gets in my path, I'm going to bump him off.' ''

This is in substance the testimony of the commonwealth.

The defendant, Taylor, said that he killed Moore, but at the time he did so he was deputy sheriff, and had placed Moore under arrest for being publicly drunk; that:

"I called to him he was under arrest and he jumped his hand under his bib of his overalls and come out with a pistol, and just as he jerked his pistol he bumped his elbow. There was an electric victrola there and another five cent marble machine that they shoot marbles with a steel ball, they looked like marbles—and I told him I would have to put him under arrest, and he bumped his arm and just as we started to wheel around I went for mine and I fired mine. He fell down there and I got his pistol out of his hand and came on down and gave it to the high sheriff and asked him to go make an investigation that night."

Also, that he shot Moore to prevent him from shooting him; that Moore had his gun under the bib of his overalls and came out with it when he put him under arrest. He further stated that before finding Moore in Poer's restaurant he had been informed that he had been shooting his pistol on or near the railroad that evening and came very nearly shooting a man; that he and Moore were at the time on the best of terms. He denied that he had prevented Moore and his family in any way from getting water at his well; denied that he made threats attributed to him by the witnesses Middleton and Lee, or that he made any threats at all. Clay Hornsby, a witness for the defendant, said that he saw Moore the evening of the shooting around and about the village of Pansy; that he was drunk and disorderly. Gib Osborne saw Moore a short time before he was shot, but could not say he was drinking. He heard Moore say that he did not intend to go home; that he "might go to the old field," but if he did, he would "take somebody with" him. John Hicks, another witness, saw Moore in Pansy drinking about 1 o'clock of the day he was shot; that Moore was talking about "the law," but called no names. He patted a bulk under his overalls and said

that "it is a .38 and a G—— D—— good one," and further stated that "before 10:30 in the night the law may go to the grave." Harrison Dilman said that he saw Moore at Pansy that evening just before he was killed. He was shooting his pistol around and about the church and just over his head; that he saw him with his pistol in his hand about the time he was shot. Lewis Scott also saw Moore at Pansy with a pistol, and saw him shoot it three or four times. He was drinking beer. Walter Posey saw Moore about three or four minutes before he was shot; that he heard the shot; that Moore had a pistol in his hand; that he saw him pull his pistol; that he saw Taylor, after he had shot Moore, put his (Taylor's) pistol in his scabbard, and then take the pistol that Moore had and lay it upon the victrola in the restaurant. Bill Moody, another witness, stated that he heard Taylor say to Moore, "You're under arrest," at about the time the pistol fired; that after Moore fell, he saw it in Moore's hand; that the shot that killed Moore, he heard immediately after Taylor told him he was under arrest.

The aforesaid is, in substance, the evidence of the defendant.

It will be observed that there is a sharp conflict and contradiction of the evidence of the eyewitnesses as to whether or not Moore was drunk at the time he was shot, and whether or not he was placed under arrest by Taylor before he was shot, and whether or not Moore drew his pistol or attempted to draw it, and whether or not Taylor while in the performance of his duty as deputy sheriff shot him in self-defense. Based upon that state of facts, the court gave to the jury the customary and often approved instructions, covering murder, manslaughter, and the law of self-defense. No objections were made to any of the instructions given by the court except instruction No. 4. That instruction is as follows:

"The court says to the jury that the defendant, Hugh Taylor, was at the time of the killing mentioned in the evidence, a deputy sheriff of Harlan county, Kentucky, and as such it was his duty to arrest the deceased, Robert Moore, if he had reasonable grounds to believe that he had committed a felony, or if the deceased was drunk in his presence, but before doing so it was the duty of the said

defendant, Hugh Taylor, to notify the deceased of his purpose to arrest him, if he had time to do so before making the arrest, and the cause for which he was arresting him, and to command him to submit himself to arrest; and it was likewise the duty of the deceased, Robert Moore, when notified to submit to arrest to do so in a peaceable manner, and if the jury shall believe from the evidence in this case that the deceased, Robert Moore, resisted arrest and refused to submit to said arrest in an effort to prevent being arrested, then the defendant, Hugh Taylor, had the right to use such force as was reasonably necessary to prevent the deceased from escaping, even to the extent of shooting and killing the deceased, if the defendant in the exercise of reasonable judgment believed it was necessary to do so, and if the jury believe from the evidence that the shooting and killing of the deceased occurred in the manner and under the circumstances set out in this instruction, then the said shooting and killing was excusable and the jury should acquit the defendant.''

The serious objection and criticism to instruction No. 4 is that the court predicated the defendant's right to use such force as was reasonably necessary only to prevent Moore from escaping, which, we think, was a prejudicial error. There is no proof in the record that Moore was attempting to escape. If for that cause alone the defendant had shot and killed him, he would not have had any right to do so. Moore was arrested for a misdemeanor committed in the presence of Taylor, the officer, and there is proof to the effect that he was drunk in Taylor's presence, a deputy sheriff. In addition to an instruction authorizing the jury to find Taylor not guilty, if they believe under the evidence that he shot and killed him in his own self defense, there should have been an instruction given under the proof as to the right of Taylor as an officer, under the circumstances.

We have held that where an officer is resisted in his effort to make an arrest, as appears from the testimony of a number of witnesses, in the present case, who saw the killing, the officer may use such force in his effort to make the arrest as is necessary, or appears to him in the exercise of a reasonable judgment to be necessary, to overcome such forcible resistance. According to some

of the evidence at least, Taylor was engaged at the time in the performance of his duty as an arresting officer. The proof is that he told Moore, in substance, to consider himself under arrest. There is also evidence that Moore at once resisted the arrest. Then Taylor had the right to use such force as was necessary, or reasonably appeared to him to be necessary, but no more, to overcome the forcible resistance of Moore, if any, to repel such force, even to the taking of the life of Moore. A failure of the court to give the jury such an instruction was error. Taylor being an officer in the performance of his duty, under the proof in the instant case, is not only entitled to an instruction on his right of self-defense, but also an instruction presenting his rights and duties as an officer in repelling the force of the party he was endeavoring to arrest, even if the offense committed in his presence was only a misdemeanor. This rule we approved in the cases of Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298; Hatfield v. Commonwealth, 248 Ky. 573, 59 S. W. (2d) 540; Mays v. Commonwealth, 266 Ky. 691, 99 S. W. (2d) 801; Collett v. Commonwealth, 269 Ky. 346, 107 S. W. (2d) 280; and many other cases that might be cited.

It is further insisted by counsel that the court should have defined what constituted drunkenness and what constituted a felony, as used in the instructions. We see no merit in that contention. Some confidence must be imposed in the intelligence of the ordinary jury. Certainly, the jury would know the meaning of words of such common use.

On a new trial, if the facts be practically the same, the trial court will so modify instruction No 4 as to the defendant's rights as an arresting officer, as to make it conform to this opinion and the opinions cited.

Wherefore, the judgment is reversed with proceedings consistent herewith.

Whole court sitting.