# Taylor v. Commonwealth.

Dec. 7, 1945.

Sylvester V. Little for appellant.

Eldon S. Dummit, Attorney General, and M. J. Sternberg, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

The appellant, Roscoe Taylor, Jr., was jointly indicted with Garfield Burkhart, Jr., for the crime of murder. They were jointly tried and convicted. The appellant was given a sentence of five years in the State Reformatory, from which judgment he appeals.

In his motion for new trial the appellant urged sev-

eral grounds for reversal, but in his brief the only ground on which he relied was that there was not sufficient evidence on which a jury could base a verdict to find him guilty. Consequently, the other points raised in his motion for new trial must be considered abandoned. It is obvious from the record that the appellant was convicted as an aider and abetter, as the evidence unmistakedly shows that Garfield Burkhart, Jr., fired the shot which killed Ford Gregory. Our consideration, therefore, is directed to the question of whether or not there was evidence justifying the submission of the case to the jury as affecting the appellant.

The Commonwealth introduced seven witnesses, four of whom, namely, Chester Gregory, Lula Gregory, Claudie Root and Pearl Miller, were eyewitnesses. These four witnesses tell substantially the same story, as follows: There had been a bond sale at Bryan Browns, all of the witnesses had attended and at the close were walking down the London-Manchester pike in the same direction. The three girls had stopped to wait for a girl friend. Ford Gregory, the deceased, and Chester Gregory walked up to where the girls were waiting. These two had passed Junior Taylor, the appellant, Junior Burkhart, his codefendant in this case, and Eugene Thomas about 25 yards back of this point. As Ford and Chester Gregory approached the girls, Taylor, Burkhart and Thomas were just behind them. There is no conflict in the evidence up to this point, and the record is clear that no incident had occurred giving the slightest hint of trouble, in fact, no words of any kind had passed between any of the parties. According to the testimony of the four eyewitnesses, introduced by the Commonwealth, the three boys came up behind Ford and Chester Gregory. Junior Taylor, the appellant, called Ford Gregory a "son-of-a-bitch," Ford answered, "that is hard to take." Taylor then said, "you are nothing but a black son-of-a-bitch," and started on Ford with an open pocket knife. Ford Gregory pushed Junior Taylor back, then Junior Burkhart pulled a pistol and said, "don't do that" or "you can't do that to a friend of mine." Burkhart then snapped the pistol. Lula Gregory stepped between Burkhart and Ford Gregory and asked Burkhart not to shoot. Burkhart snapped the trigger again, and Lula jumped from between Burkhart and Ford Gregory. Burkhart fired the gun and Ford ducked

away and started to run, then Burkhart fired a shot which struck Ford in the back of the head and caused his death.

Pearl Miller, the only other witness for the Commonwealth who was near the scene, testified that she was walking down the road from the bond sale; that she heard two shots and immediately thereafter met Junior Burkhart and Junior Taylor walking fast, and that Burkhart had a pistol in his hand.

The defense introduced the two codefendants and Eugene Thomas, a lad 15 years of age who accompanied the defendants from the bond sale to the scene of the shooting. The appellant testified that as he and his two companions approached the Gregory boys, Ford Gregory, without any provocation, knocked him to the ground, and as he was getting up he heard Burkhart say, ''don't do that.'' He said he heard a pistol snap and saw Chester Gregory snapping a pistol. He then turned away to leave the scene and heard two shots fired. He continued on his way and was joined several minutes later by Junior Burkhart. He stated that he wasn't aware that Ford Gregory had been shot until later on that evening when he heard someone talking about it. He stated that he did not have a knife with him that evening.

Junior Burkhart, who actually did the shooting, testified that when he and his companions approached the Gregory boys, Ford Gregory, without any provocation, jumped on the appellant, Junior Taylor, and hit him; that Chester Gregory had a gun which he pointed at Burkhart and started snapping; that he told Chester to come no further and when Chester refused to stop he pulled his gun and shot over Chester Gregory's head in order to stop him; that this did not stop Chester, and as he kept coming he then shot again, intending to shoot over Chester's head but that in some way Ford Gregory was hit in the head by the second shot.

Eugene Thomas, the only other witness who testified for the codefendants, said that when he approached the scene he went over and was talking to Claudie Root, one of the girls; that the first thing he saw was Ford Gregory knocking Junior Taylor down; that he then heard Junior Burkhart say, ''don't do that,'' and saw him pull his pistol; that he heard two shots fired; that Ford Gregory ducked when the first shot was fired but

on the next shot he was hit; that he did not hear Junior Taylor say anything and that he saw no pistol at all about Chester Gregory.

From the above evidence we are to determine whether or not a directed verdict of not guilty should have been given the appellant. There is no direct evidence in this record showing any prearrangement or mutual understanding between the appellant and Burkhart, the principal. However, the evidence does show that the boys were together at the bond sale before the fight; that they left the bond sale together; that they approached Ford Gregory armed with deadly weapons; that the appellant, without any provocation, attacked the deceased, Ford Gregory, with an open knife after the use of vile epithets against him; that after Ford Gregory had either knocked or shoved the appellant to the ground, his companion, Burkhart, took up the fight and fired the shot causing Gregory's death, after which they hastily left the scene together.

The appellant seems to take the view that since there was no evidence of previous understanding or agreement between Burkhart and him, and since under the evidence he was no more than a bystander or spectator, he was entitled to a directed verdict. It seems to be the general rule that the existence of a common purpose and the joint character of the undertaking may be inferred from all the circumstances accompanying the act. The fact is inescapable that Burkhart and Taylor were together before the commission of the crime, during the commission of the crime, and left the scene of the crime together; that the appellant, by the use of vile language and unprovoked attack upon Ford Gregory, committed an act which facilitated or brought on the commission of the crime.

The rule as set out in Roberts v. Commonwealth, 212 Ky. 791, 280 S. W. 111, 113, and reiterated in numerous other cases, is undoubtedly the proper and governing rule as touching aiding and abetting. In that case the court said: "In order to constitute one an aider or abetter in the commission of a crime he must be actually or constructively present at the time of its commission and participate in some way in the act committed. It is not essential that there should be a prearrangement or mutual understanding or concert of action,

but in the absence of these, it is essential that the one so charged should in some way either by overt act or by expression or advocacy or sympathy encourage the principal in his unlawful acts.''

This court has repeatedly held that when there is direct conflict in the evidence, then the weight of the evidence and the credibility of the witnesses are functions peculiarly within the province of· the jury, and the jury's determination will not be disturbed unless it is so incredible on its face as to require its rejection as a matter of law. Ferguson v. Commonwealth, 291 Ky. 222, 163 S. W. 2d 449.

We see no persuasive reason why there should be a disturbance here. The judgment is affirmed.