## Pool v. Commonwealth.

January 13, 1948.

Rehearing denied October 19, 1948.

Zeb Stewart and Louis P. McHenry for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Charley Pool, the appellant, for the second time stands convicted with death penalty for the murder of Mrs. Virginia Harris. He now brings us this second appeal.

Leaving out any duplications among them, appellant's present contentions appear to consist of five projected grounds for reversal. He says the trial court (1) should have removed the case to the proper United States District Court for a hearing, (2) should have quashed the indictment because colored persons have been systematically excluded from jury service in the county of this trial, (3) should have separated the witnesses during the course of this trial, (4) should have excluded appellant's written confession because of its illegality as admissible evidence, (5) should have directed a verdict in his behalf at the conclusion of evidence.

Appellant's written confession, his original testi-

mony, and this case in broad, general outline are all set forth in this court's opinion upon the former appeal after the first trial. See Pool v. Commonwealth, 301 Ky. 531, 192 S. W. 2d 490.

According to the Commonwealth, Pool has now given four different versions of this tragedy, viz., that the decedent was killed by mules; that she was killed by this appellant himself, as shown by his written confession, which he now repudiates; that she was killed by a colored man named Hopson; that she was killed by a white man named Goodman, this being appellant's version as given by him on the second trial.

■ The trial court having overruled a petition for removal of this case to a United States court for trial, appellant says that this was an error. He cites no authority in support of this contention except the provision contained in 28 U. S. C. A. sec. 74. That code provision sets out a method of removal of a criminal prosecution against a citizen if he is denied any right secured to him by law. In his petition for removal, appellant attempted to specify three grounds as justification for the requested removal, viz., (a) that he was held without right of bail and (b) that he was without mental capacity at the time of this crime and (c) that he was a victim of racial prejudice. As we understand the law, a person is not entitled to bail in a case involving capital offense where the proof is evident or the presumption great as to ultimate guilt. Sec. 16, Ky. Constitution. And since appellant was present at the very time and place when and where decedent was killed and was drinking heavily throughout most of that day and since he orally confessed the crime, according to one witness, even before he was arrested, we cannot see that he was ever entitled to bail in a case of this kind. As to his mental responsibility, he has never made motion for a sanity inquest, and in point of fact he defended his case at the second trial on the sole ground that the crime had been committed by another person. No right of making an insanity defense has been denied because he made no motion for any such inquiry and he never made any such defense at either trial. As to the question of racial prejudice, he made no motion for any change of venue. Neither did he make any sort of affirmative showing in support of this contention. We

think the trial court made no error in overruling appellant's petition for removal, but if we ourselves are in error in this respect or in respect to appellant's immediately following contention, he has further recourse to the U. S. Supreme Court by petition for a review on writ of certiorari.

■ The trial court having overruled a motion to quash the indictment, appellant says that this was an error. It is necessary to say specifically that appellant is a Negro. He based his contention for quashing on his assertion that the grand jury which indicted him was not made up of representative citizens of the county, that is, both white and colored, and that colored persons had been arbitrarily and systematically excluded from jury service in the county solely because of their race. The record shows that the trial court went into this question rather carefully and by separate hearing. Such hearing indicated that the jury commissioners of the county, which has a colored population amounting to about 30% of the total, had been regularly instructed not to exclude colored persons from jury service on a racial basis; that names of colored persons had been drawn from the jury wheel for jury service with a fair degree of regularity during the past few years; that at least one or possibly more names of colored persons had been drawn for petit jury service from that same lot of jury wheel names which produced the very grand jury of appellant's indictment. This county has one colored magistrate and he himself testified on this hearing to the effect that he had personally done grand jury service within the past few years and that numerous colored persons of the county had done jury service, especially on petit juries, in the last few years. It is not the rule that a colored citizen has a right to a jury of his own race or even with the population percentage of his own race thereon. But the rule is that he has a right to a jury from which his own race has not been systematically excluded or arbitrarily barred for racial reasons. Even though a county might have a 50% colored population, yet it still might conceivably have only a 1% colored population eligible by law for jury service. See Hale v. Commonwealth of Ky., 303 U. S. 613, 58 S. Ct. 753, 82 L. Ed. 1050. It is the duty of courts to protect a minority group such as that of a colored minority

group, regardless of the unpopularity frequently encountered in doing so. And we find ourselves with an earnest and sincere desire to follow such a course in this case and in all similar cases. But we do not believe that any minority right has been violated under the proven circumstances of this particular case. On the basis of the evidence produced on the separate hearing as to this jury question, we do not believe that the trial court committed error in overruling appellant's motion to quash the indictment.

■ The trial court having overruled a motion to separate the witnesses of this case, appellant says that this was an error. The motion was overruled because there had been a previous trial at which no similar motion had been made and from which previous trial a general and common knowledge prevailed as to the established facts of this case, also because the known prosecuting witnesses consisted largely of persons not subject by law to trial separation, also because the court was crowded and the facilities for separation limited. The question of separating or not separating the witnesses upon a trial is one for the discretion of the trial court, and this court has declined to interfere with that discretion unless it appears to have been clearly abused to the positive detriment of the complaining party. Robertson v. Commonwealth, 275 Ky. 8, 120 S. W. 2d 680; Moore v. Commonwealth, 223 Ky. 128, 3 S. W. 2d 190; Mink v. Commonwealth, 228 Ky. 674, 15 S. W. 2d 463. The practice of separating witnesses is a good one, because it tends to elicit the truth and promote the ends of justice, as we have declared in previous decisons, but since it does not appear that there was an abuse of discretion in this particular case, we do not believe that the trial court made an error in overruling appellant's motion on the subject.

■ Appellant further contends that an error was committed in the admission of his written confession as legal evidence against himself on this trial. Under what is known as "the law of the case" rule, this written confession, just as it was set out at full length in our opinion on the first appeal, would not now be a proper subject of sound legal attack upon this second appeal. See Johnson v. Commonwealth, 225 Ky. 413, 9 S. W. 2d 53. Nevertheless, we have sought to look at

the basic merits of appellant's contention in this respect. On the occasion of this confession, there were present, in addition to appellant, three persons, viz., a deputy sheriff, the county attorney, the landlord of appellant. One of these three testified that Pool was told that he did not have to make a statement and that any statement he made could be used against him. No one refuted that testimony. Pool himself related that the confession was obtained after the following manner:

"Q. And when you got in the room (where he made the confession) what happened? A. They said they wanted to talk to me secretly, and so then the guard he went on out and shut the door and the three of them just sit there and looked at one another, they just sit and looked, before they said anything to me, and then finally Mr. George he said, 'Charley you know when I set out to find out anything I usually find out everything I wants to know, now go ahead and tell us about it, I know you done it.'

"Q. Go on. A. Then Mr. Major was sitting there and he said, 'Yes, that is what we is here for, to help you.' Then I told them exactly like Mr. Goodman done it but I said that I did it."

A confession voluntarily made and without fear of harm or hope of reward constitutes legal evidence. See Sebree, Jr., v. Commonwealth, 200 Ky. 534, 255 S. W. 142. We cannot see that appellant's own story as to this confession incident would lead to the conclusion that he was, contrary to the terms of KRS 422.110, plied with questions or threatened with harm. Therefore, we do not believe that any error was committed in the admission of appellant's written confession as probative evidence against him on this trial.

■ The trial court having overruled a motion for directed verdict in his favor, appellant says that this was an error. This contention would seem to be predicated on the legal soundness of the immediately preceding contention. But since we have already ruled that the immediately preceding contention is unsound and that the written confession of Pool does constitute legal and probative evidence against him, the Commonwealth must necessarily have produced sufficient evidence of murder guilt in this case to make the question of appel-

lant's liability one for the jury's determination. His established responsibility arose from his own confession as well as from the contradictory value of his deliberate testimony as he gave it on his first trial. We think that the Commonwealth proved that Pool had all the evil or malice necessary to place this homicide in the category of what the law would regard as one of first degree or of what the general public would regard as one of "cold-blooded" nature.

In the law's modern conception of what may be wilful murder the time element between the perpetrator's original design and his execution of that design is not necessarily of long duration. But the resulting act itself, together with the evil implied therefrom, even though emanating only from a brief preliminary thought, may suffice to constitute wilful murder in some cases. This is especially true where the actually committed wrong sprang from an original idea of committing some entirely different wrong even though the latter was itself never consummated. See Turner v. Commonwealth, 167 Ky. 365, 180 S. W. 768, L. R. A. 1918A, 329. We believe no error was committed in the submission of this case to the jury upon proper instructions containing the whole law of the case, including theories of murder and manslaughter. And this appears to have been done by the trial court.

Although Charley Pool is a poor, illiterate, obscure, colored man without influence, yet we have tried to examine his case, as to the fairness of his trial, with the same degree of care as if he were a wealthy, educated prominent white man of great power. We must now say that we feel that his second trial was fair and legal and free from prejudicial error. And so, Charley, having carefully examined your case, we will not sustain your contentions, but we will say to you what we have said in previous and similar instances, "May God have mercy on your soul."

The judgment is affirmed.