Ben Dewey JONES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 18, 1955.

As Modified on Denial of Rehearing
Sept. 30, 1955.

T. E. Mahan, C. B. Upton, Williamsburg, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MONTGOMERY, Justice.

Ben Dewey Jones was convicted of willful murder and his punishment fixed at life imprisonment. He was jointly indicted with George Taylor, but tried separately. The indictment charged the willful murder of Leander Gibson in the first count and two previous convictions for manslaughter and dwelling house breaking in the second and third counts.

On this appeal, he seeks a reversal of the judgment on several grounds, the most serious of which are the following: (1) the verdict of the jury was against the law and the evidence; (2) erroneous instructions; (3) improper and prejudicial argument made by the prosecuting attorneys; (4) permitting the deceased's widow to testify after having remained in the courtroom during the statement of the case by the Commonwealth's attorney; and (5) remarks attributed to the court in charging the grand jury made in the presence of various members of the petit jury.

In order to evaluate these alleged errors, it will be necessary to review the evidence in the case.

Deceased, Leander Gibson, thirty-six years old, and his wife lived in Jellico, Tennessee. He had operated a grocery store there for about a year. Prior to that time, he had lived in Bell County on Highway 92, running from Williamsburg to Pineville, and had been a coal miner in Knox County. On the Sunday that Gibson was killed, he, his wife and four-year-old child left Jellico in their truck for a visit to her father's home on Greasy Creek in Whitley County. When they reached Poplar Creek, her husband drove off Highway 92 and up a hollow known as "Bullskin Branch" or "Hollow" for the purpose of trying out a pistol he had recently acquired. Bullskin Hollow is thickly wooded, with high hills on either side, and appears to have been used for various dubious purposes, both day and night. No one lived nearby.

Mrs. Gibson testified that her husband got the pistol out of the dashboard of the truck and that both fired it at a small tree growing on the bank of the mountainside. One of the shots fired hit the tree. They went down the bank and examined the place where the bullet had hit the tree.

These shots were heard by appellant Jones and his co-defendant, George Taylor. Jones had qualified as a constable on July 28, 1951, but had never renewed his bond. Taylor had been deputized by Jones that day. Jones testified that he considered this firing of shots by Gibson a misdemeanor. He and Taylor left their car and walked to where Gibson and his wife were. Neither of them knew Gibson, nor saw the shots fired.

Apparently, the first words spoken were when appellant inquired, "Don't you know it is against the law to shoot on Sunday?" The evidence is in conflict as to what took place next. Edith Gibson, wife of the dead man, said that her husband replied, "Buddy, I just got my gun and I wanted to try it out." Appellant then pulled his gun and Taylor jabbed his gun in her husband's back. When he jumped back, Taylor and Jones started shooting.

Jones said that Gibson answered him by saying, "Hi Hi or He He, so it is" and pointed his gun at Jones, saying "I will kill you." Jones testified that he said, "Drop that gun, you are under arrest"; that he backed up a step or two, hands open, and said to Gibson, "What's the matter?" Appellant said further that while he had his hands up Taylor got behind Gibson, jabbed him in the back, and told Gibson to drop his gun, that he was under arrest. In whirling around, deceased struck Taylor with his elbow and shot Taylor in the left arm.

Taylor testified that he (Taylor) then started to run, shooting at Gibson as he ran, and fell over the bank. Taylor said Gibson then fired another shot.

Dr. H. W. Clinton removed from the body of the dead man two bullets, one a .45 caliber and the other a .38. He stated that the wound made by the .38 bullet was sufficient to produce death and that the wound made by the .45 bullet also was sufficient to produce death. Jones testified that the gun fired by him was a .38.

Mrs. Gibson, the only eyewitness for the Commonwealth, testified that the offi-cers never at any time told her husband he was under arrest. She said further that the only shot her husband fired was the one that went into the ground as he was sinking. She said that nobody told her husband to drop his gun. In fact, she said her husband never had his gun up or pointed at Jones or Taylor. Her account of the shooting was to the effect that Jones and Taylor fired the first shots without warning.

The coroner of Whitley County at the time of the killing testified that there were powder burns on Gibson's clothing.

■ Appellant's guilt was entirely a question of fact for the jury's determination, depending on whether it would believe Mrs. Gibson or Jones and Taylor. It has been held repeatedly that where there is a direct conflict in the evidence, then the weight of the evidence and the credibility of the witnesses are functions peculiarly within the province of the jury, and the jury's determination will not be disturbed. Here, the jury believed the witnesses for the prosecution rather than the defendant and his witnesses. Taylor v. Commonwealth, 301 Ky. 109, 190 S.W. 2d 1003; Gabbard v. Commonwealth, 314 Ky. 240, 234 S.W.2d 752. See 6 Kentucky Digest, Part 2, ☞747, Page 188, Criminal Law, for other cases.

The court gave twelve instructions designed to cover all phases of the case. Appellant complains of various errors therein.

■ In Instructions I and II, on murder and voluntary manslaughter, appellant contends that the use of the phrase "so as to cause or hasten his death" was error, claiming that there was no evidence which positively established that the bullet from appellant's gun killed Gibson. The testimony of Dr. Clinton was to the effect that the .38 bullet was sufficient to produce death, and Jones testified that he fired the .38. In Bennett v. Commonwealth, 150 Ky. 604, 150 S.W. 806, 808, 43 L.R.A.,N.S., 419, deceased was shot by two brothers, one or both of which shots wounded him

and one was necessarily fatal and the other possibly not. The Court held:

"* * * The law will not stop, in such a case, to measure which wound is the more serious, and to speculate upon which actually caused the death. * * * Whether one actually inflicts the fatal wound, or contributes to or hastens the death in some minor way, he is guilty of the crime. And whether he hastens the death must be for the jury. The instruction was right. Hopkins v. Commonwealth, 117 Ky. 941, 80 S.W. 156, 4 Ann.Cas. 957."

Clark v. Commonwealth, Ky., 243 S.W. 2d 52, where the corpus delicti was not proven, is distinguished from this case because it was established here.

■ It was unnecessary to give an instruction on malicious shooting and wounding under KRS 435.170 because the wounded person died. Bennett v. Commonwealth, above; Luttrell v. Commonwealth, 250 Ky. 334, 63 S.W.2d 292.

■ In Instruction V, the court instructed on appellant's right as a peace officer to arrest and the force to be used in perfecting the arrest. Appellant complains that the instruction is erroneous because the court failed to qualify the instruction by saying that it was appellant's duty to notify deceased of the arrest and purpose thereof if he had time to do so, or that there was no duty to notify of the arrest unless Gibson did not know the purpose for which he was being arrested.

Under the facts of this case, Instruction V was as favorable to appellant as was justified. No offense was committed in the presence of appellant or Taylor for which the deceased was liable to be arrested. Even under the statements of appellant and Taylor, there was time to advise deceased that he was under arrest and the offense. The evidence does not show that the shooting took place so quickly that there was not time to advise deceased concerning the arrest.

The instruction is favorable to appellant, in that it instructs the jury that appellant was a peace officer, although his status as such, as well as that of his so-called deputy, admit of doubt. Further, it was not shown that the firing of a pistol at a remote place in the woods was any violation of law for which deceased would have been subject to arrest.

Wood v. Commonwealth, 246 Ky. 829, 56 S.W.2d 556; and Taylor v. Commonwealth, 272 Ky. 408, 114 S.W.2d 482, cited by appellant, are not controlling on this point.

■ Appellant contends that Instructions VI and VII on aiding and abetting are erroneous inasmuch as the court failed to instruct the jury that appellant had the same right to shoot to protect Taylor as he had to shoot for his own protection. If these instructions are read with Instructions IV and V, specifically referred to therein, this objection is removed. Stanley's Instructions to Juries, 1948 Supplement, Section 800, Page 148, and cases cited therein.

Further objection is made to the phrase "counselling and advising" as used in Instructions VI and VII. These instructions dealt with appellant as an aider or abettor to Taylor under circumstances warranting the conclusion that Taylor was guilty of murder or voluntary manslaughter. Each instruction authorized conviction only in the event that the jury also believed that appellant was aiding or assisting Taylor in doing the shooting. These substantially follow the form of similar instructions contained in Stanley's Instructions, Section 869, Page 1152, and Section 872, Page 1157. Toncray v. Commonwealth, 291 Ky. 471, 165 S.W.2d 8, is not applicable.

■ It is not error under the facts of this case to fail to define sudden affray upon a conviction for murder. No prejudicial error is observed in the form of the definition given in this case. Brummett v. Commonwealth, 235 Ky. 322, 31 S.W.2d 391; Shorter v. Commonwealth, 248 Ky.

37, 58 S.W.2d 224; Wooten v. Commonwealth, 299 Ky. 598, 186 S.W.2d 652.

The next ground urged for reversal is that improper and prejudicial argument was made by the prosecuting attorneys in describing the defendants as "trigger happy", and in arguing that since there were two of them they could have grabbed Leander Gibson and overpowered him rather than shoot him.

■ As was said by Justice Siler in Sexton v. Commonwealth, 304 Ky. 172, 200 S.W.2d 290, 293:

"It is fundamental that the argument of counsel should at all times be confined to the questions in issue and the evidence relating thereto adduced at the trial and to such inferences, deductions, and analogies as can reasonably and properly be drawn therefrom. 53 Am.Jur. 386.

"Argument of counsel should be limited to matters within the record or to fair and reasonable deductions arising from the record. Louisville & N. R. Co. v. Baker's Adm'r, 183 Ky. 795, 210 S.W. 674.

"Argument of counsel must not arouse passion and prejudice, must be pertinent to law, and consistent with facts proven or inferences therefrom. City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022."

■ The argument must be both improper and prejudicial to warrant upsetting a jury's verdict. Commonwealth v. Denny, 271 Ky. 608, 112 S.W.2d 1016.

■ The inference that defendants were "trigger happy" may well have been based on the evidence as to powder marks, the number of shots fired, the fact that both appellant and Taylor used their guns, and other circumstances leading up to and during the shooting. Likewise, the argument is warranted that Jones and Taylor could have overpowered Gibson rather than shoot him. Taylor was near enough to jab a gun into Gibson's back and could well have grabbed him, and together with Jones, certainly had a reasonable opportunity to have subdued Gibson without resorting to gunfire. Such being the case, the argument is not considered as being improper or prejudicial and is based on factual testimony.

■ Appellant also urges that it was improper for the court to permit the widow of the deceased to testify for the Commonwealth after having remained in the courtroom during the statement of the case by the Commonwealth's attorney. She was the first witness called in the case, and after having testified, the Commonwealth's attorney elected to keep her in the room. She had not been excluded from the room when both sides requested that the witnesses be excluded, but had remained therein unknown to counsel on either side or to the court. It has been held that the exclusion of a witness is within the discretion of a trial court and is not reversible error unless the court has abused its discretion. Roberts v. Commonwealth, 94 Ky. 499, 22 S.W. 845, 15 Ky.Law Rep. 341; White v. Commonwealth, 301 Ky. 228, 191 S.W.2d 244. Again quoting Justice Siler in Pool v. Commonwealth, 308 Ky. 107, 213 S.W.2d 603, 606:

"* * * The question of separating or not separating the witnesses upon a trial is one for the discretion of the trial court, and this court has declined to interfere with that discretion unless it appears to have been clearly abused to the positive detriment of the complaining party. Robertson v. Commonwealth, 275 Ky. 8, 120 S.W.2d 680; Moore v. Commonwealth, 223 Ky. 128, 3 S.W.2d 190; Mink v. Commonwealth, 228 Ky. 674, 15 S.W.2d 463. The practice of separating witnesses is a good one, because it tends to elicit the truth and promote the ends of justice, as we have declared in previous decisions, but since it does not appear that there was an abuse of discretion in this particular case, we do not believe that the trial court made an error in overruling appellant's motion on the subject."

 The trial court on the opening day of court, January 4, 1954, administered the oath of office to the newly elected county officials and magistrates and then proceeded to impanel and instruct the grand jury. In the course of his instructions, he stated that:

"One out of three homicide cases on the court's record for the last twenty-five years involved a peace officer. Peace officers have no right to 'pack a 45' all the time. Many men have carried guns so long they have been bent to one side from its weight. These guns are carried for years and when used in the killing of some innocent person the claim of self-defense follows."

Appellant's case had already been set for trial on January 7, 1954. At the time the statement was made, various members of the petit jury panel were present in the courtroom. Ten of the petit jury panel were later selected on the jury in this case, the two other members being bystanders.

The objection to the panel was timely raised by motion, which was overruled. Counsel for appellant insist that this statement poisoned the minds of the jury and resulted in the life sentence for appellant. Affidavits of bystanders in the courtroom were filed by the Commonwealth's attorney, seeking to show that the statement was general in nature and no specific mention was made of any case by name or party, violation of law, or trial of any officer. The reference to "packing a 45" evidently did not refer to appellant since he had a .38 instead of a .45. The statement referred to conditions of crime prevailing in the county. It was made in pursuit of the duty of the court to charge the grand jury and in connection with desired cooperation that should exist between the new officials and law enforcement agencies.

No affidavits were filed by counsel for appellant showing that any of the jurors selected were present or heard the statement, so we are left to conjecture as to whether the jurors selected to try the case were actually present in court or heard the statement. The record is silent as to whether any of the jurors were asked on voir dire as to the statement or any possible impression created thereby or influence therefrom. It may be presumed in the absence of such showing that counsel for appellant were diligent in asking each juror selected whether he or she had any opinion or impression concerning the case or knew of anything that would prevent them from giving appellant a fair and impartial trial. Any disclosure on voir dire on these suggested matters would have been basis for challenge for cause. There is no complaint made by appellant that he was forced to accept any juror because all of his peremptory challenges had been exhausted.

Thus, we have a case where the statement of the court is complained of, but we are reluctant to hold that this alone, without further showing that appellant had used every means to protect against any possible evil influence therefrom, or that any such influence did affect the jury, is sufficient to set aside the jury's verdict. Especially is this true under the facts of this case. The verdict of the jury appears fully justified.

In reaching this conclusion, we have considered the duties of the court as described in Harshfield v. Commonwealth, 212 Ky. 87, 278 S.W. 623; Taylor v. Commonwealth, 240 Ky. 450, 42 S.W.2d 689; Gross v. Commonwealth, Ky., 256 S.W.2d 366; Ann. Cas.1915B, 824; 23 C.J.S., Criminal Law, § 993, p. 351; 53 Am.Jur., Trial, Sections 76, 77, pages 75, 76.

The other grounds urged for reversal have been considered but have been found without merit.

Judgment affirmed.